This is an appeal from a decision of the Board of Review, Division of Unemployment Compensation, reversing a determination of the Appeal Tribunal and declaring the appellants to be ineligible for benefits under the Unemployment Compensation Law.
On January 11, 1946, a strike at the newspaper plant of the Trenton Times Corporation was called by Local 71 of the International Typographical Union of which the appellants *Page 366 
are members. Thereafter, the strikers were replaced and, as found by the Board of Review, the employer's normal operations were fully restored by August 1, 1946. The dispute between the employer and the Union has, nevertheless, continued and pickets have been maintained at the employer's plant.
In furtherance of its strike activities, the Union founded a daily newspaper known and operated as The Trentonian and many of the appellants were assigned by the Union to perform work in its publication and distribution, along with their other strike duties. Thus, the secretary of the Local testified that his strike duties included, "Picketing, distributing circulars, addressing and mailing literature, working in the composing room, canvassing for the Union, canvassing the general public asking for strike support, acting as speaker in committees and various organizations, directing the advertising campaign for the Union paper, The Trentonian, and helping distribute The Trentonian to subscribers." Although the strikers were receiving strike benefits from the Union, they were receiving no compensation from The Trentonian and were not included on the books and records of The Trentonian as employees. However, as found by the Board of Review, The Trentonian, after August 20, 1947, "went on a permanent basis, strike benefits ceased and the workers became regular employees of the newspaper."
The strike benefits received by the appellants were paid in accordance with provisions of the Book of Laws of the International Typographical Union which, in section 10, provides that in the event of a strike there shall be paid "an amount equal to 40 per cent. of the minimum scale for each married man and 25 per cent. for each single man." Section 12 provides that no member of the local on strike shall be entitled to weekly benefits unless he reports daily to the proper officer of the Local while the strike continues and that any "member refusing work while out on strike shall be debarred from all benefits under this law, and for each day's work performed one-fourth of the members' regular strike benefits for that week shall be deducted." Section 10 has been amended to provide for benefits of 60 per cent. for married men and 40 *Page 367 
per cent. for single men. The strike fund from which benefits are paid has been established over a period of many years by members' contributions. Thus, all of the appellants, while employed as members of the local, contributed to the strike fund; while on strike and receiving benefits, their contributions were suspended.
The Board of Review first found that there was a "stoppage of work" from January 11, 1946, to August 1, 1946, but not thereafter, and that consequently the disqualification underR.S. 43:21-5(d) ended on August 1, 1946. See Lesser, LaborDisputes and Unemployment Compensation, 55 Yale L.J. 167 (1945). The Board expressed the view that even though the disqualification under R.S. 43:21-5(d) had ended, the claimants were still not eligible for benefits unless it appeared that they were, after August 1, 1946, (1) unemployed (see R.S. 43:21-4) and (2) available for work (see R.S. 43:21-4, 43:21-5). Cf.Sakrison v. Pierce, 66 Ariz. 162, 185 P.2d 528 (Sup. Ct.
1947). The parties do not question the soundness of the foregoing. See Muraski v. Board of Review of U.C.C.,136 N.J.L. 472 (Sup. Ct. 1948). Boyer v. Board of Review,4 N.J. Super. 143 (App. Div. 1949). The Board, without making any finding as to the appellants' availability for work, then determined that the appellants were not unemployed in view of their activities for The Trentonian and were ineligible for benefits.
The issue thus presented is whether a striker who performed work for The Trentonian prior to August 20, 1947, and received strike benefits is employed or unemployed within the intendment of the statute. R.S. 43:21-19(i)(1) provides that employment shall mean service "performed for remuneration" or under any contract of hire. In its primary sense the statute would appear to contemplate service for wages although we shall not attempt the setting forth of any general formula. See Schomp v. FullerBrush Co., 124 N.J.L. 487, 490 (Sup. Ct. 1940); affirmed,sub nom., State U.C.C. v. Fuller Brush Co., 126 N.J.L. 368
(E. A. 1941). We have not been referred to any pertinent judicial decisions although the appellants have cited administrative rulings that strike *Page 368 
benefits are not regarded as wages under the taxing provisions of the Federal Social Security Act. Cf. Israelite House of David v.United States, 58 Fed. Supp. 862 (D. Mich. 1945).
The Board's position is that the strikers rendered services for The Trentonian; that the strike benefits they received constituted payment or "remuneration" for those services within the statutory definition of employment; and that consequently they were employed and ineligible for benefits. In the light of the particular circumstances presented, we are unable to accept these views. We do not believe that the strike benefits were in any real sense in payment of the services to The Trentonian. They came from a fund to which the appellants had contributed and might be analogized to savings funds or to private insurance for which they had paid the premiums. The amount of benefits, although dependent on marital status, had no relation to the nature or extent of their Trentonian services. If they were at home sick or were fulfilling other strike duties, such as picketing, they received the same benefits. If work from other employers became available and they refused to accept it they were deprived of benefits and if they had part-time work from other employers their benefits were reduced. It is true, as the Board indicated, that the strikers were required to perform assigned strike duties and would not receive their benefits if they declined without reason. That, however, would appear to be simply an exercise of Union discipline rather than an indication that the benefits were being paid as wages or remuneration for services rendered. We have concluded that The Trentonian activities of the strikers and their receipt of strike benefits prior to August 20, 1947, did not constitute employment within the statutory definition; this construction is fully consonant with the broad remedial objectives of the statute which have been frequently recognized by our courts. See Bergen Point Iron Worksv. Board of Review, 137 N.J.L. 685 (E. A. 1948).
The question still remains as to whether the strikers were available for work within the requirements of R.S. 43:21-4(c). There is no finding whatever by the Board of *Page 369 
Review on this issue and the limited evidence presented to us is not sufficient to justify any independent factual determination. We consider that, under the circumstances, the just procedure would be to remand the matter to the Board for the taking of additional testimony, if necessary, and for the making of appropriate determinations of fact and decision thereon.
The decision is reversed and the matter is remanded to the Board of Review for further proceedings in accordance with this opinion.