**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ROADWAY EXPRESS, INC., Respondent.**

**No. 7643.**

United States Court of Appeals Fourth Circuit.

Argued June 6, 1958.

Decided June 9, 1958.

Thomas J. Ryan, Atty., National Labor Relations Board, Washington, D. C., (Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Dwight Parsons, Akron, Ohio (Buckingham, Doolittle & Burroughs, and Herman E. Rabe, Akron, Ohio, on the brief), for respondent.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and MOORE, District Judge.

PER CURIAM.

The National Labor Relations Board has filed a petition for the enforcement of an order against Roadway Express, Inc., requiring it to reinstate Morrice Dulin, who, according to the Board's findings, had been dismissed in violation of Sections 7, 8(a) (1) and (3) of the National Labor Relations Act (29 U.S. C.A. §§ 157, 158(a)).

In 1955 a meeting of some 700 members of the Teamsters Union was held in Charlotte, North Carolina, to accept or reject a collective bargaining agreement negotiated in their behalf with certain trucking companies in the Carolinas. There was objection on the part of some of the members to the terms of the proposed contract and to the manner of its submission, and some of the members felt that the contract was being "railroaded" through the meeting.

The meeting voted for acceptance and was quickly adjourned. As the members were leaving the hall, Dulin and others walked up to union officials to discuss the matter. An altercation ensued in which there is no evidence that Dulin actually struck or harmed anyone, but his activity in the meeting and after the meeting was resented by some of the officials.

As a result of the dissatisfaction, the proposed contract was later renegotiated. J. Robert Wilson, Vice President of the respondent company, represented the trucking companies in the renegotiations in the course of which the union officials frequently mentioned the episode that followed the meeting and specifically referred to Dulin among others.

At the time of the meeting Dulin was an employee of the Johnson Motor Lines, but about six months later he obtained employment from the respondent. Before the expiration of the 30-day probation period he was summarily dismissed by Kenneth G. Younger, Terminal Manager of the respondent, who had hired him. According to the credited testimony, no formal explanation was then given for this action, which Younger said he was compelled to take on orders from Mr. Wilson. Younger did, however, say: "It is the hardest thing in the world for me to do. I never run into anything like this before. We are going to have to let you go * * * until you get all of your trouble straightened out with the union. * * * Well, you have got to go to the union, and when you get that trouble straightened out you have got a job as long as

you want it as far as we are concerned. * * * I was supposed to let you go a week ago," but that he "hated it * * * it's a shame to see something happen to a man like that."

About ten days later Younger told Dulin again, "You know where your trouble comes from as good as I do * * * Your trouble is still with the union hall * * * You get that straightened out down there and you can go back to work." Dulin testified that Younger then opened his desk drawer, looked down into it and called off the names of various participants in the events following the meeting. During this conversation Dulin was asked about the extent of his participation in the incident. Dulin stated that he had held the lapel of a union official and restrained him from hitting one of the protesting union members, but denied that he had hit anyone.

On a later occasion, when Younger was visited by Dulin, the former said that his hands were tied and he could not do anything for Dulin or tell him anything, adding, "I have a job to think about myself and I am married and have a family." Dulin testified that on this occasion Younger did say the decision to discharge him was made in Akron, that it was because of union trouble, and that the company had been told to let Dulin go "before something happened to the men and the equipment up the road."

Dulin testified that another of the respondent's local officials, Hilsheimer, the Assistant Manager of the Terminal, also informed Dulin that the matter with him was his "union trouble." This was corroborated by another employee who testified that, in a separate conversation, Younger told him this was the reason for Dulin's discharge.

At the hearing before the Trial Examiner, the respondent denied that the discharge was in any way influenced by the wishes of the union or its officials. Wilson testified that he came upon Dulin's name in the list of employes and that this "rang a bell" in his mind so

that he made inquiry and found that he was the same individual who had been previously mentioned to him as one of the participants in the incident in Charlotte after the union meeting, and that he did not want a man of "short temper" driving one of his company's trucks.

The Examiner credited Dulin's version, but also believed Wilson when he testified that he ordered the discharge because of his belief that Dulin was short tempered. The Trial Examiner explained the statements of Younger and Hilsheimer as mere speculation about the underlying reason for the discharge. He, nevertheless, concluded that the evidence showed a violation of § 8(a) (1) which condemns as an unfair labor practice an employer's interference with an employee in the exercise of the rights guaranteed him by the Act. He recommended that the Board order reinstatement of Dulin with back pay as a means appropriate to eliminate the effect of the violation of § 8(a) (1).

The Board reached the same basic conclusion, but upon a finding of a violation of § 8(a) (3) which forbids discrimination in regard to hire or tenure to encourage or discourage membership in any labor organization. It predicated that conclusion upon a finding that Younger and Hilsheimer had been told by Wilson the reason for the discharge as they reported it to Dulin. Taking this view of the case, the Board found it unnecessary to pass specifically on the violation of § 8(a) (1), except as that follows from a finding of a violation of § 8(a) (3).

Accordingly, it issued a cease and desist order in substantially the same form and language as that proposed by the Trial Examiner and also ordered reinstatement and back pay as the Trial Examiner had recommended.

Enough of the testimony has been outlined above to show that the Board acted upon a sufficient legal basis in making its findings of fact and in its conclusion.

The contention of the respondent that Dulin had lost his protected position under the Act by his conduct following the meeting cannot be sustained. No attempt was made to contradict Dulin's version of the episode following the meeting. We cannot accept the respondent's argument that his conduct in seeking, as described by him, to speak to a union official about union business, was so outrageous or offensive as to disentitle him to the protection of the Act.

A decree will be entered enforcing the order of the Board.

Enforced.