**SIMMONS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 5950.**

United States Court of Appeals
First Circuit.

March 21, 1963.

Eduardo Negron Rodriguez, San Juan, P. R., with whom Fiddler, Gonzalez & Rodriguez, San Juan, P. R., was on brief, for petitioner.

Melvin J. Welles, Washington, D. C., Attorney, with whom Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Gary Green, Washington, D. C., Atty., were on brief, for respondent.

Before WOODBURY, Chief Judge, and MARIS * and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

Just as in union there is strength, in disunity there is difficulty. The question in this case is upon whom fall the consequences. For some years the production employees of Simmons, Inc., a corporation doing business in Puerto Rico, were represented by a union known as the Mattress Workers. This union had a collective bargaining agreement, to expire January 31, 1959. By 1958 the union was apparently moribund, and the Seafarers International Union of North America, etc., (SIU) became interested in taking over. The employees elected a Comite of five members, some of whom were officers of the Mattress Workers, to deal with SIU, and to negotiate with the company. In spite of the Comite's support the company refused to recognize

---

* Sitting by designation.

SIU without an election. On March 5, 1959, SIU was certified. Thereafter SIU apparently lost interest in the Comite. One Terpe, an official of the international organization, and its provisional Puerto Rico president, took charge of the bargaining, and even met with the company without informing the Comite. On March 20 the Comite learned of this and attended the meeting then scheduled. Most of the meeting was consumed by disagreements between it and Terpe. Two Comite members testified, and the Board found, that Terpe told the Comite that if no agreement was signed that night, none would ever be signed. This remark was echoed by Raffone, a company representative. The Board found that Raffone added that if a contract was not signed that night this would be reason enough to discharge anyone. The meeting broke up, however, without any agreement having been signed, and Raffone's stricture was not again repeated.

█ The Board held Raffone's statement to be an unfair labor practice. It may be that Raffone merely felt that he was siding with SIU in its disagreement with the Comite. SIU was the certified bargaining agent, and if Raffone had aligned himself with the Comite he might well have been in difficulties. It is also true that SIU and the Comite should not have been laundering their differences at the bargaining table. However, it was not necessary for Raffone to threaten discharge. We cannot quarrel with the Board's conclusion. Cf. N. L. R. B. v. Roadway Express, Inc., 4 Cir., 1958, 257 F.2d 948; N. L. R. B. v. Nu-Car Carriers, Inc., 3 Cir., 1951, 189 F.2d 756, cert. den. 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687.

On Monday morning, March 23, the Comite caused the employees to strike. On a previous charge by the company we held, reversing the Board (which, in turn, had reversed the trial examiner) that the Comite was "declaring its independence" as a labor organization separate from SIU, and violated, by calling the strike, section 8(b) (4) (C) of the National Labor Relations Act. Simmons,

Inc. v. N. L. R. B., 1 Cir., 1961, 287 F. 2d 628. Terpe resolved, at least temporarily, the differences between himself and the Comite and the strike was thereupon terminated. The next morning, March 24, the company summoned the members of the Comite and discharged them for the announced reason that they had incited the strike. The following day the employees struck to protest these discharges, which strike lasted until April 28, when enjoined by the district court in a section 10 proceeding. SIU never sanctioned the strike and, indeed, participated in making the charge which resulted in the injunction. In the meantime, on April 10, the company completed a collective bargaining agreement with SIU. The Comite had participated in some of the intermediate negotiating meetings, but largely in a dissident manner. The agreement was completed shortly after it withdrew. The agreement said nothing specifically about the strike, but contained a general no-strike clause.

The questions on this appeal other than the Raffone matter, which we have already disposed of, relate to the company's taking back strikers after April 28 only as new employees and, in some cases, not at all. Basically the Board held this improper on the ground that the March 25 strike, as distinguished from the March 23 strike, was an unfair labor practice strike. It rejected certain additional contentions made by the company.

█ Concededly the March 25 strike could not be regarded as an unfair labor practice strike were it not for the inclusion of one Aviles Padilla, a member of the Comite, in the March 24 discharges. Aviles Padilla had been absent from March 20 to 23, inclusive, and had not participated in the Comite activities on those dates. He did, however, come to the company's office on March 24, with knowledge of what had taken place, when the company requested the appearance of the Comite members. He remained silent when the company said their discharge was for having incited the strike. The Board held that since Aviles Padilla had

not actively participated, his discharge was an unfair labor practice. We agree. International Ladies' Garment Workers' Union v. N. L. R. B., 99 U.S.App.D.C. 64, 1956, 237 F.2d 545; N. L. R. B. v. Deena Artware, 6 Cir., 1952, 198 F.2d 645, 652, cert. den. 345 U.S. 906, 73 S. Ct. 644, 97 L.Ed. 1342; See N. L. R. B. v. Nu-Car Carriers, Inc., supra; N. L. R. B. v. Marshall Car Wheel & Foundry Co., 5 Cir., 1955, 218 F.2d 409. His silence, relied upon by the company, was immaterial, because we agree with the Board that he was not charged with, nor discharged for, personal participation by reason of some mistake of fact by the company as to his personal activity. Therefore there was nothing to correct, and no duty to speak.[1] Because of his discharge the Board concluded that the March 25 strike was to be regarded as an unfair labor practice strike in spite of the fact that it was not such with respect to the discharge of the other members.

■ The cases are not as clear as the Board intimates to the effect that the employees may always term a strike an unfair labor practice strike if an unfair labor practice was one of the employees' grievances. Obviously they should be able to do so if the strike would not have occurred but for the unfair labor practice even though the employees included some other matter. N. L. R. B. v. Remington Rand, Inc., 2 Cir., 1938, 94 F.2d 862, cert. den. 304 U.S. 576, 58 S.Ct. 1046, 82 L.Ed. 1540; Berkshire Knitting Mills v. N. L. R. B., 3 Cir., 1943, 139 F. 2d 134, cert. den. 322 U.S. 747, 64 S.Ct. 1158, 88 L.Ed. 1579; N. L. R. B. v. Stilley Plywood Co., 4 Cir., 1952, 199 F.2d 319, cert. den. 344 U.S. 933, 73 S.Ct. 504, 97 L.Ed. 718; N. L. R. B. v. Birmingham Publishing Co., 5 Cir., 1959, 262 F. 2d 2; N. L. R. B. v. Wooster Division of Borg-Warner Corp., 6 Cir., 236 F.2d 898, modified on other grounds 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823; N. L. R. B. v. Barrett Co., 7 Cir., 1943, 135 F.2d 959; N. L. R. B. v. West Coast Casket Co., 9 Cir., 1953, 205 F.2d 902; N. L. R. B. v. Wichita Television Corp., 10 Cir., 1960, 277 F.2d 579, cert. den. 364 U.S. 871, 81 S.Ct. 113, 5 L.Ed.2d 93; General Drivers & Helpers Union, Local 662 v. N. L. R. B., 1962, 112 U.S.App.D.C. 323, 302 F.2d 908; cert. den. Rice Lake Creamery Co. v. General Drivers & Helpers Union Local No. 662, 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed. 2d 65. However, a number of courts have indicated that if the employer can show that the strike would have taken place irrespective of the unfair labor practice, the employees cannot use it for cover. See N. L. R. B. v. Remington Rand, Inc., supra, at 872, of 94 F.2d; N. L. R. B. v. Stackpole Carbon Co., 3 Cir., 1939, 105 F.2d 167, 176, cert. den. 308 U.S. 605, 60 S.Ct. 142, 84 L.Ed. 506; N. L. R. B. v. Wooster Division of Borg-Warner Corp., supra, at 907 of 236 F.2d; N. L. R. B. v. Barrett Co., supra, at 962 of 135 F.2d.

If there is any force in this suggestion, this is the exact case for its application. The company did not engage in several activities; its conduct was more nearly a single act—the discharge of the Comite members as a group for inciting the strike. Even though the company erred in including Aviles Padilla, it is clear that his discharge would not have occurred but for the illegal strike. Correspondingly, the March 25 strike would unquestionably have taken place even if Aviles Padilla had not been discharged, and would have been maintained even if the company had realized the error of his inclusion and offered him reinstatement. Cf. N. L. R. B. v. Draper Corp., 4 Cir., 1944, 145 F.2d 199, 201, 156 A.L.R. 989.

1. We resist, however, the suggestion that his silence is to be disregarded because of language difficulties. Gentile, the company representative, testified that he translated what he said, and we cannot doubt that if he did not, someone else did. Language difficulties may sometimes be very real, but there is a tendency to make them a whipping boy. Thus the present trial examiner who, without contradiction, is alleged not even to speak Spanish, took it upon himself to conclude that the translation of an important telegram involved in our previous decision, though agreed to by all parties, was imprecise. See also Bordas & Co. v. Pizzaro Serrano, 1 Cir., 1963, 314 F.2d 291.

Before resolving this question, we turn to further contentions of the parties. The Board was warranted in rejecting the company's claim that the March 25 strike was a continuance of the March 23 section 8(b) (4) (C) strike. The company contends that nonetheless it was a "wildcat" strike, and equally unprotected. The Board did not pass on this contention, except to reject it by implication. In this court it argues that wildcat strikes relate only to actions by minorities. The company further contended that after April 10 the strike was in violation of the general no-strike clause in the agreement. The Board held that as an unfair labor practice strike it did not fall within such a clause, citing Mastro Plastics Corp. v. N. L. R. B., 1956, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309.

The Board did not, and could not, find that the March 25 strike was sanctioned by SIU. Terpe testified that he had not authorized it, and that he sought to induce its abandonment. He further testified, without contradiction, that he told the employees he considered the strike inimicable to the current negotiations with the company. It is, of course, a matter of record that SIU joined in the charge which led to the district court's injunction.

It seems to us that the Board has not put the whole case in perspective, and in examining each tree has failed to see the forest. It may be that, standing alone, something can be said for calling a strike fully protected even though its major objective was manifestly not the company's unfair labor practice. Although again we intimate no views, it may be that, standing alone, a strike contrary to the wishes of a certified union is to be protected if a majority rather than a minority go out. And it is of course the fact that an unfair labor practice strike to protect the employees' right freely to choose their representation is not within a general no-strike clause. Mastro Plastics Corp. v. N. L. R. B., supra. But when the whole case is put together we get a different picture. Even a strike by the majority of the employees violates the no-strike clause if it was not caused by an unfair labor practice. Confectionery & Tobacco Drivers Union, Local 805 v. N. L. R. B., 2 Cir., 1963, 312 F.2d 108. Even a majority of the employees can go only so far in acting independently of the certified union. In Douds v. Local 1250, Retail Wholesale Department Store Union, 2 Cir., 1949, 173 F.2d 764, 9 A.L.R.2d 685, which goes a long way to protect independent action, the court said, at p. 769, "[T]he certified agent has it always in his hands to take over the 'adjustment' of any 'grievance,' * * * and by including it in a collective agreement with the employer, finally to dispose of it."

It is true that the discharge of Aviles Padilla was simply because of his membership on the Comite, and hence an unfair labor practice. But as we have pointed out, the strike was triggered by the discharge of the Comite as a whole for what has been found to be illegal activity. It seems to us that there is a substantial difference, so far as exemption from a no-strike agreement is concerned,[2] between a strike by the employees because of the company's improp-

---

2. The second trial examiner found the company could not "reasonably assume" that the employees would know of the presence of the no-strike clause in the contract, and that it would therefore be "inequitable and unjust" to hold that the clause applied to a continuation of the strike after April 10. We have already indicated the extent of the examiner's desire to resolve all matters against the company. See fn. 1, supra. The finding of the employees' supposed ignorance is contrary to all of the evidence. One of the principal, open, Comite disputes with SIU was about the latter's insistence that a no-strike provision was its standard procedure, and that the employees acquired it when they adopted SIU representation. The Comite disclosed this to the employees, generally, by a press release and again by a speech preceding the March 23 strike. Rather than accepting the examiner's conclusion, we believe the employees had no reason to think that SIU had abandoned its position. The examiner found that the employees were all SIU members. We see no basis for his concluding that the company could not assume they knew what was going on.

er attempt to interfere with their certified representative, and a strike which is disapproved by the certified representative and which is for the most part to obtain reinstatement of dissident employees who had illegally sought to replace the certified union. To hold that the whole course of conduct of the company changes in character because the company erroneously made one extra discharge does, indeed, seem to "load the scales," N. L. R. B. v. Remington Rand, Inc., supra, at 872 of 94 F.2d. It loads them not only against the company, but against the certified union.

■ A word about the Board's point that in refusing to reinstate certain employees for striking the company said nothing about the no-strike clause. We do not think this should be determinative. The district court had enjoined the strike on the ground that there was reasonable cause to believe that it violated section 8(b) (4) (C). Such a violation would have been a complete justification for the company's position. The company did not specify any particular reason. Even if it is to be assumed that it had section 8(b) (4) (C) primarily in mind we see no objection to its raising alternative reasons, particularly when they were so closely allied in character. Cf. Confectionery & Tobacco Drivers Union, Local 805 v. N. L. R. B., supra.

■ The Board found that on April 15 the company discharged the strikers for not responding to its then request to come back to work. Assuming that to be true, the company was within its rights in treating later returning strikers as new employees.

■ There remains the matter of Aviles Padilla. This employee was not discharged on April 15, but on March 24. On the uncontradicted evidence he participated actively in the strike of March 25. He may well have continued to do so after April 10. In a sense, since his claim for reinstatement is based on the contention that he was never lawfully discharged, he, like the others, was bound by the no-strike clause. On the other

hand, we could understand that the Board might believe it would be consistent with the policies of the Act to grant him some measure of relief. Since the Board did not pass on this question in the proper framework, we believe it should now do so.

An order will be entered enforcing the order of the Board with respect to the company's improper action on March 20, but not as to the balance of its order. The matter of Aviles Padilla will be remanded to the Board for further consideration in the light of this opinion.