WORCESTER TELEGRAM PUBLISHING CO. INC. *vs.* DIRECTOR
OF THE DIVISION OF EMPLOYMENT SECURITY & others.

Worcester.   April 6, 1964. — May 19, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Employment Security*, Leaving work, Strike, What constitutes unemployment. *Strike. Labor. Words*, "Remuneration."

In a proceeding before the board of review in the Division of Employment Security on claims for unemployment benefits under G. L. c. 151A by employees who had participated in a strike arising out of a labor dispute not involving any existing contract between the union of which they were members and their employer and who were permanently displaced when their employer resumed normal production, the board was not required to pass upon the legality of the strike under the National Labor Relations Act in order to decide that they had not left their work "without good cause attributable to the employing unit" within G. L. c. 151A, § 25 (e) (1), as amended through St. 1956, c. 719, § 4, and to award them benefits.   [506–507, 511–512]
The definition of the term "unlawful labor dispute" in G. L. c. 149, § 20C (e), as amended, as including any controversy arising out of a demand that an employer commit an "unfair labor practice . . . in violation of . . . the National Labor Relations Act" was not incorporated by reference in c. 151A, § 25 (e) (1), as amended through St. 1956, c. 719, § 4.   [511]

Strike benefits received by members of a local union from an international union out of a special fund to which they had contributed did not constitute "remuneration" received by them within G. L. c. 151A, § 1 (r) (3), as amended by St. 1957, c. 632, and did not prevent them from being "in . . . unemployment" within § 1 (r) (2), as amended through St. 1949, c. 476, nor bar them from receiving unemployment benefits under c. 151A.   [512–514]

PETITION filed in the Central District Court of Worcester on February 26, 1962, for review of a decision of the board of review in the Division of Employment Security.

The case was heard by *Allen,* J.

*Arthur J. Flamm* (*Robert M. Segal* with him) for Cecil T. Gallant & others, claimants.

*William H. Lewis, Jr.,* Assistant Attorney General, for the Director of the Division of Employment Security.

*James S. Gratton* for Worcester Telegram Publishing Co. Inc.

CUTTER, J.   The claimants, union members, had been employed in the composing room of the Worcester Telegram. On November 29, 1957, they commenced a strike after the union and the Telegram had failed to make a new collective bargaining agreement.   The Telegram continued publication, replaced the strikers, and by February 15, 1958, was again in normal production.   Its general manager testified that there was no prospect that the strikers would be rehired, although it appeared that they were available for work.

During the period, February 14, 1958, to April 3, 1958, various strikers filed claims for unemployment benefits. The director allowed benefits beginning with the week of February 16, 1958.   The Telegram sought review.   See G. L. c. 151A, §§ 39, 40.

On August 28, 1958, the board of review affirmed the director's decision.   It rejected any contention that the striking employees left their employment without cause attributable to the employing unit "because the employees, among the demands presented to management, demanded objectives that were illegal under both Massachusetts and Federal laws," and held that c. 151A did not give to the board

347 Mass. 505                                                507

Worcester Telegram Pub. Co. Inc. *v.* Director of the Div. of Employment Sec.

"jurisdiction to go into the merits of labor disputes for the purpose of placing the blame . . . in order to determine whether . . . the employees are entitled to benefits." The board also took the view that the striking employees did not become "employees of the union" (and thus cease to be "in unemployment") merely because they received strike benefits from the treasurer of the international union from a special fund to which the employees had contributed.

The Telegram sought review (see c. 151A, § 42, as amended through St. 1954, c. 681, § 12) of the board's decision in the District Court. The judge remanded the case to the board of review (see G. L. c. 30A, § 14 [8]) to "determine whether . . . the strike involved an unlawful labor dispute." The board of review, after a further hearing, reaffirmed its original determination. The judge thereupon examined "the evidence, and guided by . . . *International Typographical Union* v. *National Labor Relations Bd.* 365 U. S. 705[1] . . . [ruled] that the strike was . . . 'an unlawful labor dispute.'" Purporting to act on the authority of *Howard Bros. Mfg. Co.* v. *Director of the Div. of Employment Security,* 333 Mass. 244, the judge reversed the board's decision. The claimants and the director appealed. The judge has filed a very full report to this court. Two principal issues are presented: (1) Is the board required by G. L. c. 151A and the precedent of the *Howard Bros. Mfg. Co.* case to determine whether the claimants' strike was a violation of the National Labor Relations Act? (2) Did the receipt of strike benefits disqualify the claimants for employment security benefits?

1. The first issue depends largely upon the provisions of G. L. c. 151A, § 25, pertinent provisions of which appear in

[1] Rehearing denied, 366 U. S. 941. Prior to the Supreme Court's decision, the National Labor Relations Board (123 N.L.R.B. 806) and the United States Court of Appeals (278 F. 2d 6, 11–12, 1st Cir.) had determined the strike to be illegal. The Supreme Court (p. 707) affirmed the First Circuit decision, by an evenly divided court, on the question whether the claimants could lawfully strike to require inclusion in a collective bargaining agreement of a requirement that foremen be union members and hire other employees. The decision of the Supreme Court was announced on April 17, 1961. That of the Court of Appeals was made on May 10, 1960. The first hearing before the board of review was on May 21, 1958; the second on May 13, 1960.

the margin.[2]   Section 25 prohibited the payment of unemployment benefits to a claimant in any week in which the claimant's unemployment was found to be "due to a stoppage of work which exists because of a labor dispute at the . . . establishment" where the claimant was last employed (subject to exceptions not here relevant).   The claimants, accordingly, do not argue that they were entitled to unemployment benefits while they were on strike prior to the termination of the "stoppage of work."   See *Adomaitis* v. *Director of the Div. of Employment Security,* 334 Mass. 520, 522–525.   Instead the claimants suggest that they did not terminate their employment by striking and that (see *Mengel* v. *Justices of the Superior Court,* 313 Mass. 238, 242) they remained employees until they were replaced and "substantially normal production" was resumed about February 15, 1958.   Then, they say, the "stoppage of work" came to an end, and they became entitled to benefits.

The Telegram, on the other hand, takes the position that the claimants left their work "without good cause attributable to the [Telegram as] employing unit" and that they are prevented by G. L. c. 151A, § 25 (e) (1), see fn. 2, *supra,* from receiving the benefits sought.   The Telegram relies principally on the *Howard Bros. Mfg. Co.* case.   There employees had gone on strike in violation of the provisions of a collective bargaining agreement which provided (p. 246) that "there shall be no suspension of work on account of

---

[2] Section 25 (as amended through St. 1956, c. 719, § 4) reads in part: "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter for —. . . (b) Any week with respect to which the director finds that his unemployment is due to a *stoppage of work which exists because of a labor dispute* at the . . . establishment at which he was last employed . . . [subject to provisos which do not affect the issues now raised]. (e) The period of unemployment next ensuing and until the individual has had at least four weeks of work and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left his work (1) *without good cause attributable to the employing unit* or its agent, (2) by discharge shown to the satisfaction of the director to be attributable solely to deliberate misconduct in wilful disregard of the employing unit's interest . . ." (emphasis supplied).   Section 25 has been substantially amended since 1956.   See St. 1958, c. 677; St. 1959, cc. 533, 554; St. 1961, cc. 93, 247; St. 1963, c. 447, § 2.   The substantial revision of § 25 (e) by St. 1958, c. 677, was considered in *Raytheon Co.* v. *Director of the Div. of Employment Security,* 344 Mass. 369, 370–373.   See also the later case between those parties, 346 Mass. 733.

347 Mass. 505      509

Worcester Telegram Pub. Co. Inc. *v.* Director of the Div. of Employment Sec.

such difference,'' if differences should arise between the employer and the union, and that, in the absence of settlement procedures, the dispute should be referred to the United States Conciliation Service, "whose decision shall be final and binding on both parties." Because the Howard company found it necessary to curtail production, conferences were held. The employees preferred that the management put into operation whichever of three curtailment plans it chose. When management made a choice, all the employees met on a Saturday and agreed not to report for work on the following Monday under the proposed curtailment plan. On the following Thursday, the company notified the employees who failed to report for work that they were removed from the payroll. After reciting the provisions of § 25 (e), this court said (pp. 247–248), "All of the claimants voluntarily left their work by striking in violation of their contract. They could have continued to work on the reduced schedule. If this was unsatisfactory . . . they could have sought arbitration . . .. Or they might have become entitled to benefits for partial unemployment under § 29 (b) . . . . Since the claimants left their work while substantial work . . . remained . . . and in violation of their contract, they left 'without good cause attributable to the employing unit . . . .' No wrongful conduct on the part of the employing unit is shown." [3]

Because it has now been established (after review, see fn. 1, by the Supreme Court of the United States) that the strike against the Telegram was unlawful, the Telegram argues that the present case falls within the principle of the *Howard Bros. Mfg. Co.* case, which was decided before the

---

[3] This court went on to say, "The decision of the board [which had allowed benefits] fails to take into consideration the requirement of at least four weeks of resumption of work in employment subject to the act as required by § 25 (e) . . . . And since the claimants' period of unemployment began with and was 'next ensuing' their voluntary leaving, they are precisely within § 25 (e) . . . . This decision is in line with the general purpose of the employment security law, which is to afford benefits to persons who are out of work and unable to secure work through no fault of their own. It is not the purpose of the law to provide strike benefits for persons who have voluntarily left their jobs in violation of contract, and this remains true even after the strike has technically come to an end through replacement of employees."

enactment of St. 1958, c. 677 (see fn. 2, *supra*).   The director and the claimants reply in effect (1) that the *Howard Bros. Mfg. Co.* case is distinguishable because that case involved a breach of a contract not to strike, whereas in the present case there was no contract at all, and (2) that c. 151A does not require the board to determine as a condition precedent to paying benefits to permanently displaced strikers that the strike was not unlawful as in violation of the National Labor Relations Act.   Such an interpretation of the statute, it is said, would involve the board, in the case of an employer subject to the National Labor Relations Act, in adjudicating the same issues which Congress has committed to the National Labor Relations Board.   Consequently, regardless of whether the preëmption doctrine (see *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776* [*A.F.L.*], 346 U. S. 485, 490–491) is strictly applicable, much the same risk of confusing and conflicting Federal and State adjudications would exist which the preëmption doctrine was intended to avoid.

Certainly, the present case does not involve any violation of a "no strike" contract clause, as a matter of State law, as did the *Howard Bros. Mfg. Co.* case.[4]   We have here a case where the alleged unlawfulness of the strike rests, not upon breach of contract, but upon the circumstance that an evenly divided Supreme Court of the United States, without discussion, has upheld a decision of the Court of Appeals that a "strike to obtain the 'foreman clause' " was not permissible.   The Court of Appeals (278 F. 2d 6, 11–12) upheld the National Labor Relations Board's view that "by in-

---

[4] See discussion of the *Howard Bros. Mfg. Co.* case in 1956 Ann. Surv. Mass. Law, § 14.4.   As to various problems presented by "no strike" clauses, see *Sinclair Ref. Co.* v. *Atkinson,* 370 U. S. 195; *Drake Bakeries Inc.* v. *Local 50, Am. Bakery & Confectionery Wkrs. Intl. AFL–CIO,* 370 U. S. 254, 260–266; *International Union United Mine Wkrs. of Am.* v. *National Labor Relations Bd.* 257 F. 2d 211, 214–215 (Ct. App. D.C.) ; *Lodge No. 12, Dist. No. 37, Intl. Assn. of Machinists* v. *Cameron Iron Works, Inc.* 257 F. 2d 467, 473 (5th Cir.) ; *Simmons, Inc.* v. *National Labor Relations Bd.* 315 F. 2d 143, 146–147 (1st Cir.).   See also *Mastro Plastics Corp.* v. *National Labor Relations Bd.* 350 U. S. 270, 281–284; *Mid-West Metallic Prods. Inc.* 121 N.L.R.B. 1317, 1320; *Arlan's Dept. Store of Mich. Inc.* 133 N.L.R.B. 802, 805–807; Aaron, Strikes in Breach of Collective Agreements: Some Unanswered Questions, 63 Col. L. Rev. 1027; note, 70 Yale L. J. 1366.

347 Mass. 505    511

Worcester Telegram Pub. Co. Inc. *v.* Director of the Div. of Employment Sec.

sisting upon this clause the [u]nions refused to bargain in good faith and that by striking in support of their insistence upon the clause the [u]nions had undertaken to restrain or coerce the employers in the selection of their representatives . . . in violation of § 8 (b) (1) (B) of the [National Labor Relations] Act." The court concluded (p. 12) that there were also violations of § 8 (b) (2) and of § 8 (b) (3).

The Telegram argues that there must be imported into c. 151A, § 25 (e) (1), the language of G. L. c. 149, § 20C (e), as amended through St. 1950, c. 452, § 2, defining the term "unlawful labor dispute" as including any controversy arising out of a demand that an employer commit an "unfair labor practice . . . in violation of . . . the National Labor Relations Act." Although the definition of "labor dispute" in G. L. c. 149, § 20C (c), as amended through St. 1950, c. 452, § 2, comports generally with the ordinary understanding of that term, we are not persuaded that there is incorporated in c. 151A, § 25 (e) (1), by reference the more technical definition of the term "unlawful labor dispute" found in c. 149, § 20C (e). Not only is this latter term found in another chapter of the General Laws, enacted for another purpose, but also serious practical difficulties would be encountered in using that technical definition under c. 151A, § 25 (e) (1), in determining whether an employee had "left his work . . . without good cause attributable to the employing unit." It in effect would require the board of review in each case where a striker had been permanently displaced to decide whether the strike grew out of an unfair labor practice (or other violation) under the National Labor Relations Act by the former employee or his union. Not only might an extended period be consumed in resolving that question (see fn. 1, *supra*) but also, if the board of review reached a result different from that reached by the National Labor Relations Board and the Federal courts, confusion would be likely.

We find in c. 151A no sufficient indication that there has been imposed upon the review board any such difficult judgment in a field which remains the subject of Federal statu-

512                                                  347 Mass. 505

Worcester Telegram Pub. Co. Inc. v. Director of the Div. of Employment Sec.

tory change and decisional development.   Chapter 151A was designed (see § 74, as amended through St. 1949, c. 290) "to lighten the burden which now falls on the unemployed worker and his family."   Delays incident to such a determination might defeat this purpose.   An intention to impose such delays upon claimants and to place upon the review board the burden of such difficult judgments is not to be inferred in the absence of much more explicit language than we find in c. 151A, § 25 (e) (1).   We hold that the principle of the *Howard Bros. Mfg. Co.* decision does not apply to a case where the asserted impropriety of the strike rests only upon the determination whether an unfair labor practice, or other violation of the National Labor Relations Act, gave rise to the strike.[5]   Thus the result[6] reached by the board of review is correct.   Under the *Howard Bros. Mfg. Co.* case, however, § 25 (e) (1) would have presented a question for the board's decision, if the strike had involved a contract violation of the type there considered.

2.   The Telegram also contends that the claimants are disqualified from receiving unemployment benefits because of their receipt of strike benefits from their international union.   The president of the local union testified that his occupation was "striker," that each claimant received payment from the treasurer of the international union equal to sixty per cent of his prevailing wage in the case of a mar-

[5] We, of course, need not now consider the possible effects of the 1958 amendments of c. 151A, § 25.   See fn. 2, *supra.*

[6] The result is generally consistent with certain decisions in other States, although the statutory provisions are not uniform, and the reasoning in some of the decisions might not be applicable under our statutes.   See *Fash* v. *Gordon,* 398 Ill. 210, 217–219; *Intertown Corp.* v. *Unemployment Compensation Commn.* 328 Mich. 363, 366; *Great Atl. & Pac. Tea Co.* v. *Department of Labor & Indus.* 29 N. J. Super. 26, 31.   See also *T. R. Miller Mill Co.* v. *Johns,* 261 Ala. 615, 618–622; *Sakrison* v. *Pierce,* 66 Ariz. 162, 166–173; *Monsanto Chem. Co.* v. *Commissioner of Labor,* 229 Ark. 362, 365–367; *M. A. Ferst, Ltd.* v. *Huiet,* 78 Ga. App. 855, 858–859; *Robert S. Abbott Publishing Co.* v. *Annunzio,* 414 Ill. 559, 570–571; *Carnegie-Ill. Steel Corp.* v. *Review Bd.* 117 Ind. App. 379, 390–393; *Saunders* v. *Unemployment Compensation Bd.* 188 Md. 677, 682–692; *Ayers* v. *Nichols,* 244 Minn. 375, 380–382.   Cf. *Beaman* v. *Safeway Stores, Inc.* 78 Ariz. 195, 200–201; *Bogue Elec. Co.* v. *Board of Review,* 21 N. J. 431, 436–437; *Duquesne Brewing Co.* v. *Unemployment Compensation Bd. of Review,* 162 Pa. Super. 216, 219–221, affd. 359 Pa. 535; *Byerly Unemployment Compensation Case,* 171 Pa. Super. 303, 307–311; *Milne Chair Co.* v. *Hake,* 190 Tenn. 395, 404, 405–406; *Streeter* v. *Industrial Commn.* 269 Wis. 412.

347 Mass. 505                                                    513

Worcester Telegram Pub. Co. Inc. *v.* Director of the Div. of Employment Sec.

ried striker and to forty per cent of that wage in the case of an unmarried claimant. In return for the payment, claimants, other than "[t]hose who are sick or on actual reserve duty" or similarly unavailable, "must be [union] members in good standing . . . and . . . willing to do their share of the strike duty."[7]

To be eligible for unemployment benefits under c. 151A, §§ 24, 29, as amended, a claimant must be unemployed or "in . . . unemployment." A person is in "total unemployment in any week in which he performs no wage-earning services whatever, and for which he receives no remuneration, and in which, though capable of and available for work, he is unable to obtain any suitable work. . . ." See § 1 (r) (2), as amended through St. 1949, c. 476. "Remuneration" is defined, see § 1 (r) (3), as amended by St. 1957, c. 632, as "any consideration, whether paid directly or indirectly, . . . received by an individual (1) from his employing unit for services rendered to such employing unit, (2) as net earnings from self-employment . . . ."

The review board, in its first decision, concluded that the "evidence does not support a finding that the claimants failed to meet the requirements of" c. 151A, § 29 (a), and § 1 (r) (2) and (3). The trial judge did not pass upon this issue.

Substantial evidence supported the review board's conclusion. A strike benefit fund is in a sense an insurance arrangement. As in the case of some other types of insurance (cf. *Imperiali* v. *Pica,* 338 Mass. 494, 497), the union member is required to coöperate with the union in carrying out its strike objectives, in aid of which strike benefits are paid. This seems more a condition of receiving the benefits than an employment. The strike benefits are not remunera-

---

[7] The local union president also testified that the claimants were not employees of either the local union or the international union, and that "each member of the . . . [u]nion willingly contributes to a fund . . . to provide sufficient sustenance for those members who are on strike," as a form of insurance. The strike benefits are "predicated entirely on the fact there is a strike" and the fund from which the benefits are paid is "apart from the [u]nion general fund" and "operated by a secretary-treasurer, subject to the usual auditing."

Kahler v. Marshfield.

tion paid for services rendered in the sense in which the word "remuneration" is ordinarily used. We adopt the view, taken by those courts which have considered the question, that strike benefits are not remuneration and that the claimants are not barred from receiving unemployment benefits by their receipt of strike benefits. See *Capra* v. *Carpenter Paper Co.* 258 Minn. 456, 465 ("Nor can it be said that the [strike benefit] payments they received were 'wages' as that term is used in the act. They were paid from funds to which they had contributed."); *Radice* v. *Department of Labor & Indus.* 4 N. J. Super. 364, 367–368. See also *Inter-Island Resorts, Ltd.* v. *Akahane,* 46 Hawaii, 140, 153–155. *Milne Chair Co.* v. *Hake,* 190 Tenn. 395, 404–405.

3. The decision of the District Court reversing the decision of the board of review is reversed.

*So ordered.*