BENTON, Judge,
dissenting.
The same strike against Eastern Airlines which spawned the present controversy resulted in three prior rulings by the Division of Unemployment Compensation, one involving the Airline Pilots Association. The others arose in connection with claims for benefits which Ricardo Gomez and Barney Starling, members of appellant’s local, filed after the strike was over. In three different final orders, the Division concluded that no tax was owed because strike benefits are not wages. ‘
After twice ruling in appellant’s favor, the Division again claimed back taxes were due, raising the same question with the same party a third time.[4] The court is under no greater duty to defer to the agency’s statutory interpretations than the agency itself is. The cases do not support the notion that a reviewing court should defer to a state agency with taxing authority whenever it asserts an unprecedented right to levy a tax. See *844 Kirby Center of Sping Hill v. State of Florida, Department of Labor and Employment Security, Division of Unemployment Compensation, 650 So.2d 1060 (Fla. 1st DCA 1995). The pertinent rule of decision is that taxing statutes should be construed strictly in favor of the taxpayer contesting liability.
When, on March 4, 1989, the International \$ssociation of Machinists and Aerospace Workers (IAMAW) struck Eastern Airlines, union members began receiving $100 per week in strike benefits from the union’s strike fund. Union members had created the strike fund with part of their union dues, including these claimants’ monthly payments of^$46.35 made by Eastern Airlines payroll .deductions. When, in January of 1991, East-hW Airlines ceased operations, ending the strike,[5] some union members sought unemployment compensation benefits from the Florida Department of Labor and Employment Security, Division of Unemployment Compensation (Division).
When one unemployed union member, Ricardo Gomez, sought post-strike unemployment compensation, the issue arose whether IAMAW strike benefits could be counted as part of his base period wages to increase his weekly unemployment compensation benefit.[6] The Division allowed inclusion of the strike benefits. It also gave IAMAW notice of liability, demanding retroactive unemployment compensation taxes.[7] IAMAW protested on the ground that the strike benefits were not wages under section 443.036(33), Florida Statutes (1989). On redetermination, the Division agreed, citing its earlier decision in the airline pilots’ union case. A final order in Gomez dismissing the cause was entered on June 14,1991. A similar order in the case involving Barney Starling was issued the same day, stating that “the strike benefits paid during the period of time in question did not constitute wages.”
Robert J. Tucker also applied for unemployment compensation benefits in January of 1991. On redetermination, the Commission eliminated strike benefits from Tucker’s base period wages. The decision not to treat his strike benefits as wages had no effect on the amount of his benefits.[8] Even so Tuck *845 er’s protest became the occasion for the Division’s requiring the union to litigate anew whether strike benefits are wages. The Division’s appeals referee consolidated Tucker’s and eighty-six other claimants’ protests for hearing, and entered an order on March 25, 1992, declaring strike benefits wages.
Until today, courts that have considered the question have almost universally concluded that strike benefits are not wages, even if union members are required to perform strike duties in order to receive the strike benefits.[9] Striking workers are employees not of their union but of the employer with whom their union has reached, or seeks to reach, a collective bargaining agreement on their behalf. See 29 U.S.C.A. § 152(3); Meyer v. Florida Indus. Comm’n, 117 So.2d 216 (Fla. 2d DCA 1959) (“employer-employee relationship was not terminated[10] but was merely temporarily suspended until the settlement of the labor dispute or until petitioner secured bona fide permanent employment elsewhere”).
In Worcester Telegram Publishing Company v. Director of Division of Employment Security, 347 Mass. 505, 198 N.E.2d 892 (1964), the court reasoned that striking employees were not employees of the union that paid them strike benefits, even though they were required under their union constitution to perform strike duties. Once the labor stoppage ended, the court allowed workers who were still on strike to collect unemployment compensation benefits, stating:
The president of the local union testified ... that each claimant received [strike benefit] payment[s].... In return for the payment, claimants, other than “[t]hose who are sick or on actual reserve duty” or similarly unavailable, “must be [union] members in good standing ... and ... willing to do their share of the strike duty.”
[[Image here]]
A strike benefit fund is in a sense an insurance arrangement. As in the case of some other types of insurance (cf. Imperiali v. Pica, 338 Mass. 494, 497, 156 N.E.2d 44 [ (1959) ], the union member is required to cooperate with the union in carrying out its strike objectives, in aid of which strike benefits are paid. This seems more a condition of receiving the benefits than an employment. The strike benefits are not remuneration paid for services rendered in the sense in which the word “remuneration” is ordinarily used. We adopt the view, taken by those courts which have considered the question, that strike benefits are not remuneration and that the claimants are not barred from receiving unemployment benefits by their receipt of strike benefits. See Capra v. Carpenter Paper Co., 258 Minn. 456, 465 104 N.W.2d 532, 539 [ (1960) ]. (“Nor can it be said that the [strike benefit] payments they *846 received were ‘wages’ as that term is used in the act. They were paid from funds to which they had contributed.”); Radice v. Department of Labor & Indus., 4 N.J.Super. 364, 367-368, 67 A.2d 313 [ (1949) ]. See also Inter-Island Resorts, Ltd. v. Akahane, Hawaii [46 Haw. 140], 377 P.2d 715, 723 [ (1962) ]. Milne Chair Co. v. Hake, 190 Tenn. 395, 404-405, 230 S.W.2d 398 [(1950)].
Worcester, 198 N.E.2d at 898 (footnote omitted). The court in Capra v. Carpenter Paper Company, 258 Minn. 456, 104 N.W.2d 532, 539 (1960), stated:
While it appears that the claimants as members of a union shared a common responsibility to carry on picketing, we cannot find from the record that they were obligated to engage in picketing if they found other suitable employment. Nor can it be said that the payments they received were “wages” as that term is used in the act. They were paid from funds to which they had contributed. Since the employees were not actually engaged in work other than picketing activities, we cannot say that the commissioner’s determination that they were “unemployed” was unreasonable and plainly inconsistent with the act.
In Kentucky Unemployment Insurance Commission v. Louisville Builders Supply Company, 351 S.W.2d 157, 161-62 (Ky.1961),
[t]he contention [wa]s made that a number of the employees who received ‘strike benefits’ from the union in the amount of $15 per week, during the period the plants were closed, were in effect employed by the union for picketing purposes (the picketing protested the claimed lockout) and therefore were not ‘unemployed’ within the meaning of the statute. Reference is made to various rulings to the effect that strike benefits may constitute ‘income’ for income tax purposes. It seems clear to us, however, that the fact that strike benefits may constitute ‘income’ does not mean that they constitute wages for employment.
In Radice v. New Jersey Department of Labor and Industry, 4 N.J.Super. 364, 67 A.2d 313 (Ct.App.Div.1949), a newspaper resumed operations after replacing striking workers. The union responded by founding and publishing a competing newspaper, the Trentoni-an. Union members were assigned newspaper work along with their other strike duties, but were not on the Trentonian ⅛ books as its employees. The union requested each member to report daily to a union officer in order to receive weekly strike benefits from the strike fund, and the workers eventually reported directly to the Trentonian.
The Superior Court of New Jersey held nevertheless that the strike benefits were not remuneration for the work performed at the union’s newspaper, because the benefits came from a fund to which the workers had contributed, which was said to be in the nature of a savings fund or private insurance.[11]
The amount of benefits, although dependent on marital status, had no relation to the nature or extent of their Trentonian services. If they were at home sick or were fulfilling other strike duties, such as picketing, they received the same benefits. If work from other employers became available and they refused to accept it they were deprived of benefits and if they had part-time work from other employers their benefits were reduced. It is true, as the Board indicated, that the strikers were required to perform assigned strike duties and would not receive their benefits if they declined without reason. That, however, would appear to be simply an exercise of Union discipline rather than an indication that the benefits were being paid as wages or remuneration for services rendered.
Radice, 67 A.2d at 315. In Highway Drivers, Local 710 v. Ward, 201 Ill.App.3d 534, 147 Ill.Dec. 158, 163, 559 N.E.2d 158, 163 (1990), the court said:
The strike benefit fund is, in a sense, a private insurance arrangement against unemployment due to strikes. (General Motors Corp. v. Bowling (1981), 85 Ill.2d 539, 545-46, 55 Ill.Dec. 836, 426 N.E.2d 1210.) The purpose of strike benefits is to aid *847 union members engaged in strikes or affected by lockouts. As in the case of some other types of insurance, the union member is required to cooperate with the union in carrying out its strike objectives in aid of which, strike benefits are paid. (Worcester Telegram Publishing Co. v. Director of Division of Employment Security (1964), 347 Mass. 505, 198 N.E.2d 892, 898.)
See Fox v. Mayfield, 43 Ohio App.3d 12, 538 N.E.2d 1077 (1988) (holding that “reasonable minds could only conclude that the strike benefits Fox received were not wages from Local 91, but rather were a return of dues from an insurance fund which was meant to assist union members in a strike situation”).
Nor are strike benefits wages within the meaning of section 443.036(33), Florida Statutes (1993). As payments made from a fund the recipients contributed to when they were working, they are a form of insurance benefit. The Internal Revenue Service does not treat strike benefits as wages. Rev.Rul. 68-424, 26 CFR 31.3121(a)-!.
The question of whether union strike benefits constitute wages for Federal Unemployment Compensation Act (FUTA) purposes has been considered several times by the Internal Revenue Service (IRS). In Revenue Ruling 68-424, 1968-2 C.B. 419, the constitution of the union provided that in order to receive strike benefits its members were required to report every day to strike headquarters for assignments. Although not all of the members were assigned duties every day, all who reported were paid strike benefits. The IRS stated that the benefits were paid in accordance with the union constitution, by reason of their affiliation with the union and not as remuneration for services performed by an employee for his employer. The IRS added that this conclusion was supported by the fact that the strike benefits had been paid to all in a fixed amount, irrespective of the value of any services that were performed.
The revenue ruling clearly applies to the case at bar. The benefits were paid to the members by reason of their affiliation with the union.
[[Image here]]
The only members who did not get paid were those who refused to perform any service.
Further, an across the board payment to all members regardless of the service performed, the education and experience of the member, or the amount of hours served does not comport with the normal understanding of “wages.” Under the facts of the instant ease, a person who had worked ten years for the Employer received the same amount of money as one who had worked only a few weeks before the strike began. The amount of payment received from the Council was commensurate not with the services performed, but rather with the strike benefit provided by the International Union to which the recipient belonged.
It is also important to note that in November, 1980, the Department of Revenue held that the supplemental strike benefits were not wages under the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, as amended, 72 P.S. § 7101 et seq. and that the Council was not required to withhold personal income taxes from the payments. While this decision does not control the result in the case at bar, it is certainly very persuasive and supports our finding that the payments from the “Voice’s” profits are strike benefits and not wages under the Law.
Wilkes-Barre Council of Newspaper Unions, Inc. v. Commonwealth, Office of Employment Sec., 58 Pa.Cmwlth.Ct. 1, 426 A.2d 1294, 1298 (1981).
No other state treats strike benefits as wages for unemployment compensation tax purposes. See, e.g., Worcester Telegram, 198 N.E.2d at 898; Louisville Builders, 351 S.W.2d at 162; Capra, 104 N.W.2d at 539; Radice, 67 A.2d at 315. This is significant because certain tax credit provisions in the Federal Unemployment Tax Act have promoted near uniformity in state unemployment compensation statutes. 26 U.S.C. §§ 3302, 3304. Strike benefits are not wages that require a union to pay unemployment compensation taxes.
*848 The pair of cases the majority cites in support of its conclusion that the striking workers were employees of IAMAW under the common law tests in 1 Restatement of the Law, Agency (2d ed.) § 220(2), have to do with the difference between employees and independent contractors. Both the Cantor and the Creasman courts took as a given that the claimants were receiving “remuneration,” which is the nub of the dispute here.
This is at bottom a tax ease. The outcome has no bearing on whether Mr. Tucker, Mr. Gomez, or Mr. Starling will receive or must disgorge unemployment compensation benefits. Under no circumstances are they or any other party entitled to unemployment compensation for the period the strike was in progress. The narrow question presented is whether or not strike benefits are wages on which the union owes unemployment compensation tax. Taxing statutes should be construed strictly against the taxing authority. Mikos v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc., 497 So.2d 630, 632 (Fla.1986); Philip C. Owen, Chartered v. Department of Revenue, 597 So.2d 380 (Fla. 1st DCA 1992); Florida Hi-Lift v. Department of Revenue, 571 So.2d 1364, 1368 (Fla. 1st DCA 1990). Instead, the majority has spurned accepted principles in order to impose a tax the statutes do not. I respectfully dissent.

. While different claimants are involved in the present proceeding, the amount of unemployment compensation benefits they received does not depend on the amount of tax appellant pays. As between the Division and the union, the union’s tax liability has been adjudicated.

. While on strike, the union members were ineligible to receive unemployment compensation benefits. Section 443.101, Florida Statutes provides:
An individual shall be disqualified for benefits:
[[Image here]]
(4) For any week with respect to which the division finds that his total or partial unemployment is due to a labor dispute in active progress which exists at the factory, establishment, or other premises at which he is or was last employed; except that this subsection shall not apply if it is shown to the satisfaction of the division that:
(a) He is not participating in, financing, or directly interested in the labor dispute which is in active progress; ....

. By law, the weekly benefit amount is one-half of the claimant’s average weekly wage, rounded down to the nearest dollar, not less than ten dollars nor more than $225. § 443.111(2), Fla. Stat. (Supp.1990). The average weekly wage is the total base period wages divided by the number of weeks in the base period for which wages were received. The base period is "the first four of the last five completed quarters immediately preceding the first day of an individual’s benefit year.” § 443.036(5), Fla.Stat. (1989). The benefit year is "the 1-year period beginning with the first day of the first week with respect to which the individual first files a valid claim for benefits." § 443.036(6), Fla.Stat. (1989).

. Employers, as defined in section 443.036(17), are required to make contributions, i.e., pay taxes, to the Division for the Unemployment Compensation Trust Fund. § 443.131(1), Fla.Stat. (1989). IAMAW, the international union, never paid unemployment compensation taxes in Florida, because it did not employ anyone in Florida. Its Florida locals paid such taxes on account of secretaries and other union employees. The Division has assessed the international union (although using the local’s account number) for unemployment compensation taxes on the strike benefits paid to local union members between March 4, 1989 and January 24, 1991.

. Tucker's base period was October 1, 1989 to September 30, 1990. The Wage Transcript and Determination issued by the Division indicates his eligibility for the statutory maximum weekly benefit of $225.00, based on an average weekly wage of $459.21, calculation of which [$23,-879.14/52] included $5200.00 in weekly strike benefits. But Tucker would have been entitled to the maximum $225, even without the strike benefits. In fact, his average weekly wage would have been higher, because the Division does not count weeks in which a claimant was unemployed. The Wage Transcript and Determination lists earnings of $5,442.00, $11,771.18, and $1,465.96, for a total during the base period of $18,679.14, excluding strike benefits of $5,200.00, which were paid at a rate of $100 per week. Tucker received these wages for all twen *845 ty-six weeks of the first and second quarters and for ten weeks in the third quarter. Leaving strike benefits out of the calculation, his average weekly wage for the base period was $518.87 [$18,679.14/36], so that his weekly benefit would still have been the statutory maximum, because one-half of his average weekly wage still exceeded the cap.
The record does not include sufficient evidence regarding the other eighty-six claimants to ascertain whether the amount of their benefits was affected by the decision to treat strike benefits as wages.

. The IAMAW Constitution states, "No benefits shall be paid to members who refuse to do the duties assigned to them by those in charge of the strike.” The Unemployment Commission Field Tax Auditor, Mary Elisabeth Ford, testified that there was "no record of the time each man or woman picketed in the local 702. The only record would be in the form of a 1099 which is located in Washington, D.C."

. In finding a striking worker eligible for workers' compensation, from the very employer against whom he was striking, for an injury suffered during a labor demonstration, it was said in Alaska Pulp Corporation v. United Paper-workers International Union, 791 P.2d 1008, 1012 (Alaska 1990) (Moore, J., concurring):
This legal relationship between a union and its members does not depend on whether payment of strike benefits is conditioned on participation in a union demonstration. The worker pays dues to the union for its services. One of these services is to provide benefits in case of a strike. Strike benefits are not wages paid to a worker for participating in a union demonstration, but part of the benefit package purchased with union dues. Even if payment of strike benefits is conditioned on participation in a union demonstration, the strike benefit is still a benefit, albeit a conditional one, not a wage.

. The court made reference to administrative rulings which held that strike benefits were not wages under the taxing provisions of the federal Social Security Act. Radice, 67 A.2d at 315.