The **CITY OF BURLINGTON**, an Iowa municipal corporation, Plaintiff-Appellee,

v.

Francis C. **TURNER**, as Administrator, Federal Highway Administration, et al., Defendants-Appellants.

Lucy **OLSON**, et al., Intervenors-Appellants,

v.

The **CITY OF BURLINGTON**, an Iowa municipal corporation, Plaintiff-Appellee,

v.

Francis C. **TURNER**, as Administrator, Federal Highway Administration, et al., Defendants-Appellants.

Nos. 72–1133, 72–1136.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1972.

Decided Jan 2, 1973.

---

1. Harris v. Dees, 421 F.2d 1079, 1082 (5th Cir. 1970).

Thomas G. Wilson, Atty., Dept. of Justice, Washington, D. C., for defendants-appellants.

Robert E. Stine, Springfield, Ill., for plaintiff-appellee.

Donald H. Sitz, Davenport, Iowa, for amicus curiae.

Before LARAMORE, United States Court of Claims Senior Judge, and BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

The City of Burlington, Iowa (Burlington) brought this action for a declaratory judgment and injunctive relief to challenge a determination by the Administrator of the Federal Highway Administration (Administrator) relating to tolls to be charged for the use of the MacArthur Bridge, which connects Iowa and Illinois at Burlington. The trial court determined that the opinions and orders of the Administrator relating to the standards to be followed in setting proper tolls, together with a later order prescribing the toll schedule, were arbitrary, capricious and without an adequate basis in law or in the record, and the Administrator was enjoined from enforcing its orders relating to these tolls. Judge Hanson, in a published opinion, City of Burlington v. Turner, 336 F. Supp. 594 (S.D.Iowa 1972), made comprehensive findings of fact and conclusions of law, and no useful purpose would be served in repeating or paraphrasing them in this opinion. We have carefully examined the record and the findings of fact and law made by Judge Hanson; and with the exception of the Remedy and Order, we affirm on the basis of his opinion together with the additional reasons hereinafter set forth.

The MacArthur Bridge was constructed in 1917 by private interests pursuant to authorization by Congress in 1915. This Congressional authorization specifically provided that the new bridge was subject to the Bridge Act of 1906, 33 U.S. C. § 491 et seq., which, among other things, simply provided that tolls were to be "reasonable and just" and that the Secretary of the Army [1] may from time

---

1. In 1967 this power was transferred to the Secretary of Transportation, 49 U.S.C. § 1655(g) (4), who in turn delegated them to the Federal Highway Administrator, 49 C.F.R. § 1.48(i) (1).

to time prescribe reasonable rates. 33 U.S.C. § 494.

The Administrator determined that the words "reasonable and just" used in this section of the statute should be construed in keeping with the

> "concept embodied in toll bridge legislation over the past forty years—that the rates of toll should be limited to an amount necessary to provide a fund sufficient to pay for the reasonable cost of maintaining, repairing, and operating the bridge and its approaches under economical management, and to provide a sinking fund for amortization of the bridge indebtedness."

This determination by the Administrator, thus limiting the amount which could be charged as tolls, was fully examined and refuted by the trial court.

Subsequent to the filing of the opinion of the trial court, Congress passed the International Bridge Act of 1972. 86 Stat. 731; 1972 U.S.Code Cong. & Ad. News 3883. Therein, Congress specifically limited its consent for construction, maintenance and operation of any international bridge to the provisions of the 1906 Act. The Act further provided, in § 6(1), that in the case of private bridges

> "[t]olls may be collected from the date of completion of the bridge for a period determined by the Secretary of Transportation to be a reasonable period for amortization of the cost of construction or acquisition of the bridge, including interest and financing costs, and a reasonable return on invested capital."

At the end of this period, a privately owned bridge must be transferred to a public agency.

The Secretary of Transportation requested that a provision be inserted to provide that, as to bridges constructed or acquired by a governmental subdivision, tolls could not be charged for the purpose of operating at a profit. Such a provision was made a part of the original draft, H.R. 6274, 92d Cong., 1st Sess. (1972), but was deleted prior to passage. In this regard, the House Committee on Foreign Affairs reported:

> "Section 6 is not intended to limit or affect in any way toll charges for an international bridge constructed or acquired under authority of this measure or any prior Act by any state or local government, subdivision thereof, or any other legally constituted public entity. It is the intention of the Committee that publicly owned facilities may use tolls charged for purposes other than maintenance, repair, and operation of the bridge and payment of amortized principal and interest on debts incurred to construct the bridge. The Committee recognizes that in many instances tolls from publicly operated international bridges provide needed budgetary support to local governmental bodies in economically distressed border areas.

> "Section 6 is not intended to limit the charging of tolls for international bridges, public or private, authorized by Congress prior to enactment of this legislation." H.R.Rep.No.92–1303, 92d Cong., 2d Sess. 4–5 (1972).

The Administrator argues, in a supplemental brief, that "[c]learly, the House Committee is in no position in 1972 to express the intent of the Congress which passed the Bridge Act 66 years ago." While we are mindful that the Administrator attempts to draw a distinction between past Congressional intent and present policy, this position appears completely inconsistent with his use of the wording of the General Bridge Act of 1946, and its legislative history, as an indicia of Congressional policy to determine what was "reasonable and just" under the 1906 Act. Be that as it may, we conclude that Judge Hanson was correct when he held:

> "[I]t is a violation of Congressional intent and statutory spirit [of the 1906

Act] to conclude that use of bridge revenues for non-bridge purposes is *per se* unreasonable and unjust, to look solely at revenue uses, and to limit bridge toll revenues to bridge costs . . . . ." City of Burlington v. Turner, *supra,* 336 F.Supp. at 607.

## REMEDY

■ The trial court enjoined the enforcement of the orders of the Administrator setting a formula for determining the proper tolls and later setting the actual tolls. It did not, however, remand the matter to the Department of Transportation for further consideration in light of the court's ruling. We are persuaded that under the circumstances of this case, the better procedure would be to remand the case to the Department of Transportation with directions to hold additional hearings and to make a determination of tolls that are reasonable and just pursuant to the trial court's interpretation of the 1906 Bridge Act as modified by this opinion. In so doing, the Administrator should be directed to modify his definition of "reasonable and just" contained in his order of April 30, 1971, to include the additional factor of a reasonable return on invested capital.[2]

■ The method Burlington used in setting tolls was based primarily on its financial needs, unrelated to the bridge, and is no more reasonable or just than the determination made by the Administrator pursuant to his order of April 30, 1971. The added factor of reasonable return on invested capital should result in tolls less than those set by Burlington, but may result in tolls greater than those prescribed by the Administrator.

Affirmed as modified, with directions to remand to the Administrator for fur-

ther hearings and a determination of proposed tolls which are reasonable and just in conformity with the views expressed herein.

---

2. Invested capital as used herein shall include the amount, if any, which the City paid in acquiring the bridge in 1923, plus the amounts which it has paid subsequent to that date for additions to and reconstruction of the bridge; it shall not include amounts spent for interest on revenue bonds or for normal maintenance and repair since acquisition; and replacement cost shall not be a factor in such determination. No consideration need be given to debt service on existing debt by the Administrator in determining tolls inasmuch as a reserve currently exists in excess of the amount of the bonds presently outstanding.