ALDEN ET AL., APPELLEES, *v.* U. S. INDUSTRIAL CHEMICALS CO., APPELLANT.

[Cite as Alden v. U. S. Industrial Chemicals Co., 9 Ohio App. 2d 5.]

6

(No. 601—Decided December 28, 1966.)

*Messrs. Metzenbaum, Gaines, Schwartz, Krupansky, Finley & Stern,* for appellees.

*Messrs. Squire, Sanders & Dempsey,* for appellant.

LYNCH, J. Appellees are employees of appellant, hereinafter referred to as the employer, and are members of Local 7-509 of the Oil, Chemical & Atomic Workers International Union, hereinafter referred to as the union.

The operation of the employer, because of its nature, must be manned continuously, twenty-four hours a day, seven days a week, and fifty-two weeks a year. A sudden work stoppage of more than a few hours duration would result in damage to equipment, which would make the equipment unuseable for as much as six months to a year, and which would require very expensive repairs and could result in a serious health hazard to the inhabitants of the Ashtabula area. The employer does not have sufficient supervisory personnel in the Ashtabula area to man its plant in the event of a sudden work stoppage. It would have to assemble the necessary personnel from the employer's other plants located in Texas, Illinois, and New York, which would take two or three days.

The employer and union had a collective bargaining agreement which became effective July 1, 1961, and terminated at midnight June 30, 1964. By letter dated April 14, 1964, the union notified employer that it elected to change and modify the agreement of June 30, 1961. Negotiations for a new contract began on May 18, 1964, and continued at intervals until a new agreement was signed on August 8, 1964.

There was an administrative hearing before a referee of the Bureau of Unemployment Compensation, who made a "findings of fact," of which the following is pertinent to the issue in this case:

"* * * When it became apparent to the negotiators that an agreement on the terms of a new agreement would not be reached by midnight, June 30, 1964, the discussion turned to what the situation would be after midnight on June 30, 1964. The union representatives indicated that they did not intend to call a strike and would agree to continue to work on a day-to-day extension of the existing agreement. The employer would not agree to such an extension unless there was also an agreement that either party had to give the other a written notice of a desire to terminate the extension at least 72 hours prior to the time the termination would become effective. The union would not agree to this 72 hour notice. At midnight, June 30, 1964, the existing agreement expired and no agreement to extend the existing agreement had been reached.

"During the negotiations on June 30, 1964, the employer notified the union that supervisory and other personnel from plants located in New York and Texas were standing by in Ashtabula to take over the operation of the plant at midnight and that members of the bargaining unit would not be permitted to perform their usual work unless either an extension agreement or a new agreement had not been entered into by the time for the expiration of the existing agreement. At midnight on June 30, 1964, the supervisory personnel took over the operation of the plant and the claimants were not permitted to work, although they were ready, willing and able to do so. The supervisory personnel continued to operate the plant until there was an agreement on the terms of a new contract. Both the old and new agreements contained a 'no strike—no lockout' provision. * * *."

Employees applied for unemployment compensation for the period subsequent to July 1, 1964, and the issue is whether the action of employer constituted a lockout within the meaning of Section 4141.29 (D) (1) (a), Revised Code. The referee of the Bureau of Unemployment Compensation held that employer's action was a defensive action necessary to defend its property and was not a lockout. The Board of Review of the Bureau of Unemployment Compensation approved the decision

of the referee. The employees appealed to the Common Pleas Court which reversed the decision of the Board of Review on the basis that it was unlawful, unreasonable, and against the manifest weight of the evidence.

The only Supreme Court decision pertinent to this issue is *Zanesville Rapid Transit, Inc.,* v. *Bailey,* 168 Ohio St. 351, which gives the following definition at page 354:

"A lockout has been defined as a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms. * * *"

See 33 Ohio Jurisprudence 2d 189, Labor, Section 65.

The identical issue in this case was decided on June 22, 1966, by the Sixth District Court of Appeals in the case of *Zura* v. *Marblehead Stone Division, Standard Slag Corp.,* Ottawa County Appeal No. 356,* wherein the decision of the Common Pleas Court of Ottawa County was affirmed by the entire court. The decision of the Common Pleas Court is reported in 7 Commerce Clearing House, Inc., Unemployment Insurance Reporter, 38,702, Paragraph 8508. The Ottawa County Common Pleas Court reversed the ruling of the same referee of the Bureau of Unemployment Compensation involved in this case, and held that claimants, who became unemployed when the company closed its plant after the employment contract expired because a strike appeared imminent and where leaving the plant open would have caused an undue financial loss, are unemployed due to a lockout rather than a labor dispute, and, therefore, the claimants were entitled to unemployment compensation benefits.

The decision of the *Zura case* arrives at the same result as cases in other states. *Kendall Refining Co.* v. *Unemployment Compensation Bd. of Review,* 184 Pa. Super. 95, 132 A. 2d 749; *Coast Packing Co.* v. *California Unemployment Ins. Appeals Bd.,* 48 Cal. Rep. 854, 410 P. 2d 358.

We hold as a matter of law that, under the facts of this case, there was a lockout within the meaning of Section 4141.29 (D) (1) (a), Revised Code.

*Judgment affirmed.*

Johnson, P. J., and Jones, J., concur.

---

*Appeal dismissed (40492), May 3, 1967.