Rockingham
No. 6943

MANSON MCINTIRE & a.

v.

STATE OF NEW HAMPSHIRE & a.

June 30, 1976

*Taylor & Gray* and *William J. Hurley (Mr. Alvin E. Taylor* and *Mr. Hurley* orally) for the plaintiffs.

*Edward F. Smith, Andre J. Barbeau* and *Michael M. Black (Mr. Barbeau* orally) for the defendant State of New Hampshire Department of Employment Security.

*Wyman & Bean (Mr. Arthur E. Bean, Jr.,* orally) for the defendant National Gypsum Company.

LAMPRON, J.   Appeal by the New Hampshire Department of Employment Security and the employer, National Gypsum Company, from various orders and decrees made by the superior court in hearings on an appeal by about 80 plaintiffs from a denial of unemployment benefits. Their appeal, filed in June 1973, was from a decision of an appeal tribunal of the department upholding a decision of a hearing examiner which denied plaintiffs benefits because work stoppages involved resulted from a labor dispute. RSA 282:4 F (Supp. 1975).

Plaintiffs filed a motion to be allowed to file a class appeal and for an immediate hearing "as claimants are in destitute circumstances." The Trial Court *(Dunfey,* J.) ordered that a pilot-case hearing be held on August 21, 1973, on the merits of the issue of whether the work stoppages involved resulted from a "lockout" or "because of a labor dispute". RSA 282:4 F (3) and RSA 282:4 F (Supp. 1975). The court further ordered that the decision on that

issue shall be binding in any and all other cases in which that is the principal issue raised.

The matter was heard on the set date by *Loughlin,* J., who found and decreed that the unemployment of the plaintiffs from April 1, 1973, to April 9, 1973, and from April 25, 1973, until they resumed work after an agreement was reached with the employer on September 15, 1973, was due to a lockout and found that they should have received their benefits immediately. The court denied a petition by National Gypsum Company, the employer, to enjoin the department from paying benefits pending a final determination of its appeal to this court. The court further ordered that immediate payments be made to those eligible with respect to the issue of whether or not there was a lockout.

Later the Trial Court *(King,* J.) on petition of the plaintiffs enjoined the department from deducting from their unemployment compensation otherwise due them the moneys received from the lockout fund of their union during the term of their unemployment. All exceptions of the defendants were reserved and transferred to this court.

The issues on this appeal are as follows: (1) Were the work stoppages due solely to a lockout; (2) did the payments from the union lockout fund affect the amount of the unemployment compensation due the plaintiffs; (3) was the department given a fair opportunity for preparation and trial; (4) was competent evidence of the defendants improperly excluded and incompetent evidence of the plaintiffs improperly admitted.

National Gypsum Company operated a plant in Portsmouth manufacturing gypsum wallboard. It had a labor-management contract with Local 88 of the "United Cement, Lime and Gypsum Workers International Union" which was due to expire at midnight, March 31, 1973. The agreement provided that either party could terminate it by giving written notice to this effect at least 60 days prior to its termination date. The union gave such a notice. On and after March 1, 1973, the parties entered into negotiations on a new contract which was not effectuated until September 15, 1973. When their contract expired on March 31, 1973, the employees offered to work for the company on a day-to-day basis under the same terms. The company did not accept this offer and on March 31, 1973, notified the plaintiffs that as of 12:01 a.m. April 1, 1973, their services were no longer required until further notice. On April 9, the plaintiffs at the request of the company returned to work on a regular basis until April 25 when they were

again notified by the company that their services were no longer required. Negotiations continued which led to the new contract. Plaintiffs began returning to work on September 17 and all those available had returned to work by September 24, 1973.

RSA 282:4 (Supp. 1975) reads in part as follows: "Disqualifications for Benefits. An individual shall be disqualified for benefits ... F. For any week with respect to which the commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory ... at which he is or was last employed, provided that this subsection shall not apply if it is shown to the satisfaction of the commissioner that ... (3) The stoppage of work was due solely to a lockout ...." A "labor dispute", not defined in the statute, involves any controversy concerning wages, hours, working conditions or broadly speaking, any controversy arising out of the respective interests of employer and employee. *Gorecki v. State,* 115 N.H. 120, 122, 335 A.2d 647, 648 (1975). A lockout is a withholding or cessation of furnishing work by an employer to his employees in order to gain a concession from them. *Id.* at 123, 335 A.2d at 649.

It is clear that a labor dispute existed in this case. However, RSA ch. 282 does not disqualify an employee from receiving benefits in all cases where he becomes unemployed while there is a labor dispute. Rather, it makes him ineligible only if he is out of work because of the labor dispute. *Gorecki v. State,* 115 N.H. 120, 122, 335 A.2d 647, 648 (1975); *Febbi v. Div. of Employment Sec.,* 35 N.J. 601, 608, 174 A.2d 481, 485 (1961); *see Bunny's Waffle Shop v. Cal. Emp. Com.,* 24 Cal. 2d 735, 739-40, 151 P.2d 224, 226 (1944). The fact that the dispute was the motivating cause of the employer's acts does not establish that the dispute is the cause of the claimant's unemployment. If he can prove that his situation is due solely to a lockout he is not disqualified from receiving unemployment benefits. RSA 282:4 F (3). This is in accordance with the policy of the statute which is to "provide some measure of relief against involuntary unemployment." *Armstrong v. Adams,* 113 N.H. 367, 369, 308 A.2d 842, 843 (1973). Whether or not unemployment is truly involuntary is a question of fact for the trial court.

On March 31, by agreement of the parties, negotiations were suspended to allow the union members to attend a meeting where the company's offer of a new contract was to be submitted to the membership by the negotiating committee. The minutes of that

meeting, introduced as an exhibit, show that the committee recommended that the proposed contract not be accepted, not to strike, but to work day-by-day and continue negotiations. These recommendations were accepted by the membership on a "hand vote". The results of the union meeting were made known to the company when on the night of March 31 their negotiations resumed. There was evidence that the committee "inferred" to company officials that they had the right to strike but told them it was their intent to continue negotiations and to continue work on a day-to-day basis. There was also evidence that under the union constitution and bylaws a strike vote must be by secret ballot and that such a vote would be required if a strike was to be called.

As previously stated the union's offer to work on a day-to-day basis under the terms of the old contract was refused and the company notified the plaintiffs that as of 12:01 a.m. April 1 their services would no longer be required. There was evidence by management that if an employee had showed up for work he would not have been allowed to work. The plant manager testified that when the employees were recalled on April 9 all reported except those on sick leaves and they continued to carry on their duties until April 25 when they were again notified their services were no longer required.

The plant manager also testified that there was no work stoppage or slow down while the employees were on the job, that the plant was never picketed and it operated at full production with nothing done by the employees to interfere with the normal process and procedures. There was evidence that the union offered to submit all issues in dispute to binding arbitration, which offer was refused. There was evidence by the company that because of the nature of its operation it could not risk running the plant with employees working on a day-to-day basis. However, there was evidence that when the employees were out the plant operated at 75 to 80 percent of output with salaried personnel brought in from other parts of the country. When the trial court asked the plant manager, "Do you agree that you 'locked' these employees out of the plant," he responded, "That is a common term, yes sir."

We hold that the trial court could properly find and rule reasonable the offer of the employees to continue to work on a day-to-day basis under the terms of the prior contract so as to avoid a work stoppage pending final settlement. *See Philco Corp. v. Unempl. Comp. Bd. of Rev.,* 430 Pa. 101, 104, 242 A.2d 454, 455 (1968). The trial court could find further from evidence of the

conduct of the employees when recalled, and the absence of evidence showing bad faith, that the plaintiffs intended to abide by their offer to work for a reasonable time on a day-to-day basis. Finally we hold that on all the evidence the trial court properly found and ruled that the work stoppages were due solely to a withholding of employment by the employer to obtain for itself more advantageous terms, that is, solely due to a lockout within the provisions of RSA 282:4 F (3). *Gorecki v. State,* 115 N.H. 120, 335 A.2d 647 (1975); *see Assif v. Admininistrator,* 137 Conn. 393, 398, 77 A.2d 772, 775 (1951).

As a result of being locked out, the plaintiffs were eligible under the "International Strike Fund Rules" of the union to a weekly benefit of $35 per week payable as long as sufficient money was in the fund. The department takes the position that these payments are wages within RSA 282:1-0. This section provides as follows: "'Wages' means every form of remuneration for personal services paid or payable to a person directly or indirectly, by his employing unit, including salaries, commissions, bonuses ... and similar advantages estimated and determined in accordance with the rules of the commissioner of the department of employment security." The evidence is uncontradicted that this fund is created by an allocation of part of the monthly dues paid by the members of the international union. Their employer, National Gypsum Company, contributes in no way to this fund. Consequently these lockout payments are not attributable to it as the "employing unit" and do not constitute "wages" received.

The department maintains, however, that the union is the plaintiffs' "employing unit". It takes the position that in order to receive these payments from the union fund the plaintiffs were required to picket and remain available for picketing and to forbear from working for National Gypsum. The evidence reveals that the same receipt is used in the case of a strike or of a lockout. In this case the evidence is uncontradicted that the company plant was never picketed and that the plaintiffs, instead of agreeing to forbear from working for National Gypsum, had agreed to work for it on a day-to-day basis under the terms of the old contract.

The president of the local union testified that the union required nothing from its members in exchange for the benefits received by these plaintiffs. Finally article 13 of the union constitution and bylaws sets out the conditions of eligibility to receive strike and lockout payments. Section 2 provides that a strike donation shall not be paid to any member who refuses to do the

duty assigned to him by those in charge of the strike. No such condition is attached to the receipt of lockout payments. We hold that the trial court properly held that the lockout payments were not "wages" received from an "employing unit" within the provisions of RSA 282:1-0 and were not deductible from unemployment benefits otherwise due the plaintiffs. *Worcester Telegram Pub. Co. Inc. v. Director of the Div. of Employment Sec.*, 347 Mass. 505, 513-14, 198 N.E.2d 892, 898 (1964); *Kentucky Unemp. Ins. Comm'n v. Louisville Bldrs. Sup. Co.*, 351 S.W.2d 157, 161-62 (Ky. Ct. App. 1961); *cf. Armstrong v. Adams*, 113 N.H. 370, 308 A.2d 844 (1973).

The department maintains that it was not accorded a fair opportunity for preparation and trial. Plaintiffs' appeal was filed in June 1973, was returnable the first Tuesday of August, and special pleadings were due by September 6. On a motion for an immediate hearing filed by the plaintiffs the trial court, on July 26, ordered that a hearing on a pilot case, which was to bind all other plaintiffs similarly situated, be held on August 21, 1973, and it was so held. This procedure was designed to present the single narrow issue of a lockout for resolution. Because of the economic plight of the plaintiffs due to the denial of their claims for benefits, a speedy disposition of the question of their eligibility was called for. Under these circumstances the trial court did not abuse its discretion in determining that 25 days constituted a sufficient time for the parties to prepare for trial. *Jamestown Mut. Ins. Co. v. Meehan*, 113 N.H. 639, 641, 312 A.2d 689, 691 (1973).

Finally the department maintains that it was prejudiced by evidentiary rulings made by the trial court. The first error claimed is that the court admitted oral testimony pertaining to how the lockout fund was created. The department maintains that the constitution and bylaws were the best evidence. This document was introduced as an exhibit later in the hearing so there was no prejudice to the department. *O'Neal v. Woolworth Co.*, 109 N.H. 197, 198, 247 A.2d 183, 184 (1968). The other error claimed was based on the exclusion of evidence offered by the department pertaining to the merits of the labor dispute between the parties. "The relative merits of the labor dispute are immaterial" on the issue of whether the work stoppage was due to the labor dispute or solely to a lockout. *Gorecki v. State*, 115 N.H. 120, 122, 335 A.2d 647, 649 (1975).

*Defendants' exceptions overruled.*

All concurred.