The School District of the City of Erie, Pennsylvania, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Lorraine H. Schneider, Mary V. Frank, Janice J. Toth, Shirley M. Billingsley and Martha J. Petry, Intervenors.

Argued November 13, 1979, before Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three.

*Harry K. Thomas,* with him *John W. Beatty, Knox, Graham, McLaughlin, Gornall & Sennett, Inc.,* for petitioner.

*George Levin,* with him *Shamp, Levin, Arduini & Hain,* for intervenors.

OPINION BY JUDGE MENCER, January 11, 1980:

The School District of the City of Erie (employer) has filed a petition for review challenging the eligibility of five claimants for unemployment compensation benefits covering a compensable week ending October 8, 1977. The Unemployment Compensation Board of Review (Board) held that the claimants had been "locked out" within the meaning of Section 402 (d) of the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d), and were therefore eligible for Special Unemployment Assistance (SUA) benefits, pursuant to Title II of the Emergency Jobs and Unemployment Assistance Act of 1974 (Assistance Act), 26 U.S.C.A. §3304 (Note).[1]

---

[1] While a claimant's initial eligibility for SUA benefits must be determined by reference to the Assistance Act, his or her ultimate eligibility is governed by applicable state law. *See* Section 207 of the Assistance Act.

Claimants are secretaries employed by the said school district and are members of the Erie Educational Secretaries Association (Union). The referee made the following significant findings of fact which we find to be supported by substantial evidence in this record.

4. There existed between the employer and the Union a collective bargaining agreement for the period beginning September 25, 1974 and ending on June 30, 1977.

5. On January 10, 1977 negotiations began between Union and employer negotiators for a new collective bargaining agreement to become effective upon the expiration of the existing contract, the Union having presented proposals for certain increases in economic items and for certain changes in non-economic areas, counter-proposals having been presented by the employer, none of which involved any reduction of economic benefits.

6. Intermittent negotiations between Union and employer negotiators followed January 10, 1977, and because of what was considered by the employer's negotiators to be a favorable climate in the negotiations, the employer's Superintendent of Schools, the chief educational officer of the employer, at the suggestion of the employer's chief negotiator, notified the Union in writing on June 28, 1977 that:

'The School District of the City of Erie, Pennsylvania agrees to an extension of the current contract on a day to day basis with the same benefits and pay for the same service as to such time as a new contract is signed between the School District of the City of Erie, Pennsylva-

nia and the Erie Educational Secretaries Association.'

7. The Board of School Directors of the employer was aware of the notification of June 28, 1977 by its Superintendent of Schools to the Union and made no objections thereto.

8. The Union agreed to the terms of the written notification of the employer's Superintendent of Schools of June 28, 1977 and the [claimants] continued work in accordance therewith following the expiration date of the collective bargaining agreement on June 30, 1977, negotiations for a new collective bargaining agreement having likewise continued following that date.

9. At a negotiating session of July 21, 1977 the employer's chief negotiator presented to the negotiators of the Union a final offer of settlement by the employer and advised the Union negotiators that the employer would no longer continue the day-to-day extension of the collective bargaining agreement covering the period from September 25, 1974 to June 30, 1977 after July 29, 1977 and that all fringe benefits would then be withdrawn.

10. The collective bargaining agreement covering the period from September 25, 1974 through June 30, 1977 contained provisions, inter alia, for certain hospitalization, dental, and life insurance benefits and for certain vacation, sick, and personal days.

11. Because of what was considered by the Union to be a conflict between the notification of the employer's Superintendent of Schools of June 28, 1977 with respect to extending the collective bargaining agreement upon a day-to-day basis and the position of the employer's chief

negotiator at the negotiating session of July 21, 1977 the Union, by telegram of Friday, July 29, 1977, requested of the employer's Superintendent of Schools a statement of the official position of the employer's Board of School Directors and information as to whether or not the contract extension would expire on July 29, 1977.

12. By telegram response of July 29, 1977 the employer's Superintendent of Schools informed the Union that:

'As of July 29, 1977, as you were so advised, day by day continuance of the Erie Educational Secretaries Association contract has ceased. All fringes are discontinued as of this date.'

13. By telegram of Saturday, July 30, 1977, the Union advised the employer's Superintendent of Schools of the employees' desire to continue work under the terms of the collective bargaining agreement bearing the expiration date of June 30, 1977 upon 'a day-to-day basis for a reasonable period of time' and requested advice with respect to the position of the employer's Board of School Directors.

14. On Monday, August 1, 1977, the [claimants] reported to work as scheduled and on that day the claimant [Frank] conferred with the employer's Superintendent of Schools who indicated to her that all fringe benefits under the collective bargaining agreement bearing the expiration date of June 30, 1977 were terminated.

15. By written notification to the claimant [Frank] of August 1, 1977 from the employer's Coordinator of Personnel Services, the claimant was advised that effective July 29, 1977 all 'fringes' for the Union were terminated, those

'fringes' including sick and personal days that would normally have been allocated as of July 1, 1977 and all Blue Cross/Blue Shield, life, and dental insurance, like notification having been given on the same date by the employer's Coordinator of Personnel Services to the employer's payroll department.

16. Because of the termination by the employer of the 'fringes' provided for in the collective bargaining agreement bearing the expiration date of June 30, 1977, the claimant [Frank] and 56 of her co-workers did not report for work on and after August 2, 1977 and commenced on that date a work stoppage, the total of 57 secretarial employees of the employer having been employed at various schools and facilities of the employer within the Erie School District, 30 of the group having been employed at the employer's administrative offices.

17. The notification by the employer's Superintendent of Schools to the Union of July 29, 1977 that the day-to-day continuance of the collective bargaining agreement between the employer and the Union had ceased resulted from the absence of any acceptance by the Union of the employer's stated final offer of settlement of July 21, 1977.

. . . .

21. On October 3, 1977 the Board of School Directors of the employer unanimously approved the following resolution:

'Be it resolved, that all fringe benefits on behalf of the Erie Educational Secretaries Association, which were terminated on July 29, 1977, are hereby reinstated immediately.'

22. In addition to certain 'fringe benefits', the collective bargaining agreement between the employer and the Union which expired on June 30, 1977 provided, inter alia, for grievance procedure, seniority, leaves of absence, wages and hours of work, and promotions and transfers.

23. Because there was no agreement by the employer to allow work to resume under all of the terms and conditions of the collective bargaining agreement which had expired on June 30, 1977 and which had been extended on a day-to-day basis until July 29, 1977 the claimant did not return to work following the adoption by the Board of School Directors of the employer of its resolution of October 3, 1977.

24. Agreement upon a new collective bargaining contract was reached between the employer and the Union on October 31, 1977 and the claimant returned to her employment on November 1, 1977.

As we have repeatedly stated, the test to be applied in distinguishing a strike from a lockout for purposes of Section 402(d) was enunciated in *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 444-45, 163 A.2d 91, 93-94 (1960):

Have the employees offered to continue working for *a reasonable time* under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; *and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage*

*constitutes a 'lockout'* and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply. (Emphasis added.)

Here, at the initiative of the employer, there did occur an agreement for a day-to-day extension of the collective bargaining agreement which had an expiration date of June 30, 1977. However, the employer, upon making a stated final offer of settlement on July 21, 1977, announced its intention to terminate the day-to-day extension effective July 29, 1977. There occurred, by the actions of the employer on July 29, 1977, a change in the status quo, a change substantial in nature since by virtue thereof there no longer existed a contractual agreement between the employer and the claimants' union with respect to any terms or conditions of employment. The employer's action in discontinuing the day-to-day extension of the agreement and the offer by the Union to continue to work upon preexisting terms and conditions of employment compel the conclusion that it was the employer's action that caused the work stoppage in this case. While the record is silent as to the exact length of time the Union was willing to continue work under the preexisting terms and conditions, the nature of the employment here involved does not compel a finding either that a day-to-day extension or a further continuance of the status quo beyond July 29, 1977 would have been unreasonable. *See Unemployment Compensation Board of Review v. Sun Oil Co.*, 476 Pa. 589, 383 A.2d 519 (1978) (union and employer agreed to day-to-day extension; employer unilaterally cancelled extension and altered status quo) (award of benefits affirmed by Supreme Court).

While the impact of the employer's decision to cease participation in a day-to-day extension of the collective bargaining agreement may have been most

immediately felt by the claimants in the termination of certain fringe benefits which they enjoyed under the agreement, that agreement governed additional terms and conditions of claimants' employment, including a grievance procedure, seniority, leaves of absence, wages and hours of work, and promotion and transfer rights. Consequently, the employer's restoration on October 3, 1977 of only the so-called fringe benefits of the expired agreement did not bring about for the claimants an opportunity for continuing work under preexisting terms and conditions of employment.

Further, the Union, by telegram of July 30, 1977, had informed the employer of the employees' willingness to continue work under the terms of the agreement which terminated on June 30, 1977 on a day-to-day basis for a reasonable time. Since the employer did not, either at that time or by its resolution of October 3, 1977, agree thereto, we can only conclude, as did the Board, that the work stoppage was precipitated and prolonged by the employer's action. The continuation of the work stoppage after October 3, 1977 was due to the employer's decision to restore some, but not all, of the rights, privileges, and benefits of the agreement that had expired.

Under these circumstances, it was clearly the employer and not the Union which refused to maintain the status quo and the Board properly concluded that the work stoppage was a lockout. The result we reach today is in accord with those decisions recently made in the similar cases of *Bethlehem Area School District v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 498, 405 A.2d 1026 (1979), and *McKeesport Area School District v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 334, 397 A.2d 458 (1979).

Accordingly, we will affirm the order of the Board.

### Order

And Now, this 11th day of January, 1980, the order of the Unemployment Compensation Board of Review, Decision No. B-154391, dated March 7, 1978, disallowing a further appeal to the awards of unemployment compensation benefits for the compensable week ending October 8, 1977 to Mary V. Frank, Shirley M. Billingsley, Martha J. Petry, Lorraine H. Schneider, and Janice J. Toth, is hereby affirmed.

This decision was reached prior to the expiration of the term of office of Judge DiSalle.