ORITI ET AL., APPELLEES, *v.* BOARD OF
REVIEW, OHIO BUREAU OF EMPLOYMENT
SERVICES ET AL., APPELLANTS.

(Nos. 44918 to 44924 and 44953—
Decided March 31, 1983.)

*Mr. Thurlow Smoot,* for appellees.

*Messrs. Jones, Day, Reavis & Pogue,
Mr. Stuart O. H. Merz* and *Mr. John R.
McCulloh,* for appellants.

PARRINO, J. This appeal is taken
from a decision of the court of common
pleas holding that claimants-appellees,
present and former employees of Eaton
Corporation, were eligible to receive
unemployment compensation benefits
because they were locked out in the
course of a labor dispute with Eaton.

Union officials representing claimants
bargained with Eaton management per-
sonnel through the latter months of 1979
for the purpose of negotiating a new con-
tract to succeed the existing one which
was to expire on October 31, 1979.

On October 30, 1979, union represen-
tatives withdrew all sixty of their
demands involving non-economic issues.

On October 31, management pre-
sented its final offer with respect to
economic issues.

Alfred Smith, chief union negotiator,
testified that management also required
that the union accept all of management's
demands dealing with non-economic
issues before agreement could be reached.
The union rejected management's con-
tract proposals.

Smith testified that he endeavored to
get a contract extension from Malcolm
Daisley, chief management negotiator, on
October 31, but that Daisley refused to
agree to an extension. When Smith asked
what the wages and working conditions
would be in the interim, Daisley did not
respond.

The old contract expired without a
new one having been agreed upon. At that
point the employees ceased to work.
Negotiations were later resumed and con-
tinued through November and December.
A new agreement was negotiated on
December 21, 1979 and the employees
returned to work on January 2, 1980.

Daisley admitted that Smith offered
to extend the contract and that he refused
to accept the offer. Although Daisley
stated that there was no intention on his
part to cut pay rates, he admitted that he
did not tell this to Smith. Furthermore,
Daisley at no point testified that he had
communicated to the employees that they
could continue working at the existing
pay rates or under the other terms and
conditions of the expired contract.

Smith also testified that no strike
meeting was called and that no authoriza-
tion to picket was given by the union.

A letter from Daisley to Smith, dated
November 7, 1979, which was introduced

into evidence as Claimant's Exhibit No. 9, includes the following paragraphs:

"The former Agreement has expired. As we indicated in our discussions during negotiations, we are not willing to continue operations under the terms and conditions of that Agreement.

"Please be advised that the plant is open and that we are willing to resume our discussions provided that there is an intention to make those discussions meaningful."

James Jochum, a tool design employee, testified that in prior years when the contract had been extended the company had put up notices indicating that there had been an extension and that the employees were to return to work. He observed no such notices on this occasion.

There was conflicting evidence as to whether the plant grounds were in fact open to the employees, whether employees carried strike signs, whether employees "picketed" the plant grounds or were merely "milling around" and whether employees were turned away by plant personnel or were told by plant personnel that the plant was open.

The Board of Review determined that the employees were unemployed due to a labor dispute other than a lockout and were therefore not entitled to benefits.

The court of common pleas reversed the decision of the board and concluded that the manifest weight of the evidence indicated that the employer caused the claimants' unemployment by requesting that the claimants work without any knowledge of their wages or working conditions, which terms the claimants could not reasonably be expected to accept.

Three assignments of error are set forth on appeal. We address appellants' first and second assignments of error together since they raise similar issues.

"I. The court of common pleas must be reversed because its finding that the decision of the Board of Review was 'unreasonable and against the manifest weight of the evidence' is not supported by the evidence and consequently the court has impermissibly substituted its judgment for that of the Board of Review.

"II. Eaton's refusal to extend the previous employment contract did not constitute a lockout."

These assignments of error are without merit.

R.C. 4141.29 provides in pertinent part:

"(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"(1) For any week with respect to which the administrator finds that:

"(a) His unemployment was due to a labor dispute other than a lockout * * *."

"A lockout has been defined as a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." *Zanesville Rapid Transit* v. *Bailey* (1958), 168 Ohio St. 351, 354 [7 O.O.2d 119].

Under the facts of this case it is clear that, contrary to the request of union officials, the employer refused to extend the terms of the expired collective bargaining agreement while negotiations continued. In fact, the employer admits on appeal that it was unwilling to extend the contract.

To decide whether this situation may be considered a lockout, we turn to the reasoning of the Pennsylvania Supreme Court as set forth in *Vrotney Unemployment Compensation Case* (1960), 400 Pa. 440, 443-445, 163 A. 2d 91:

"In the very delicate and sensitive negotiations which are involved in the development of a new collective bargaining agreement to replace one that is nearing its expiration, all parties must be sincere in their desire to maintain the continued operation of the employer's enterprise. The law contemplates that collective bargaining will be conducted in good faith, with a sincere purpose to find a basis for agreement. Neither an adamant

attitude of 'no contract, no work' on the part of the employees, nor an ultimatum laid down by the employer that work will be available only on his (employer's) terms, are serious manifestations of a desire to continue the operation of the enterprise. While either or both of these positions may legitimately be taken by the parties during the bargaining negotiations prior to the expiration of the existing contract, when the contract has in fact expired and a new agreement has not yet been negotiated, the sole test * * * of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for unemployment compensation benefits in the case of a 'stoppage of work because of a labor dispute' does not apply."

The rationale set forth in *Vrotney* has been followed in subsequent decisions by the courts of Pennsylvania. See *School Dist. of the City of Erie* v. *Unemployment Compensation Bd. of Review* (1980), 48 Pa. Commw. 460, 409 A. 2d 982; *McKeesport Area School Dist.* v. *Unemployment Compensation Bd. of Review* (1979), 40 Pa. Commw. 334, 397 A. 2d 458; *Woodford* v. *Unemployment Compensation Bd. of Review* (1979), 47 Pa. Commw. 232, 407 A. 2d 916; *Philco Corp.* v. *Unemployment Compensation Bd. of Review* (1968), 430 Pa. 101, 242 A. 2d 454; *Toma* v. *Unemployment Compensation Bd. of Review* (1971), 4 Pa. Commw. 38, 285 A. 2d 201.

The Supreme Court of New Hampshire in *McIntire* v. *State* (1976), 116 N.H. 361, 359 A. 2d 619, appears to have adopted this rationale as well.

As a further clarification of the rationale set forth in *Vrotney*, it has been held that where the employer claims at some point in the course of the negotiations that it is not reasonable to continue to maintain the *status quo, i.e.,* that the plant must be closed or that work could continue only under modified conditions, it must be demonstrated that the employer's refusal is essential to the continued operation of the business. *Unemployment Compensation Bd. of Review* v. *Sun Oil Co.* (1975), 19 Pa. Commw. 447, 338 A. 2d 710, affirmed (1978), 476 Pa. 589, 383 A. 2d 519.

We believe that the reasoning of the Pennsylvania courts is sound and is consistent with Ohio cases bearing upon this issue. See *Baker* v. *Powhatan Mining Co.* (1946), 146 Ohio St. 600 [33 O.O. 84]; *Zanesville Rapid Transit* v. *Bailey, supra; Alden* v. *U.S. Industrial Chemicals Co.* (1966), 9 Ohio App. 2d 5 [38 O.O.2d 21]; *Lorain Coal & Dock Co.* v. *Atkinson* (1941), 34 Ohio Law Abs. 591; *United States Coal Co.* v. *Unemployment Compensation Bd. of Review* (1940), 66 Ohio App. 329 [20 O.O. 166]; *Zura* v. *Standard Slag Corp.* (1965), 13 Ohio Misc. 317 [42 O.O.2d 15].

In *Baker* v. *Powhatan Mining Co., supra,* the court held that a union had engaged in a strike where it refused to accept a contract extension unless the company agreed that the terms finally negotiated would be applied retroactively.

The court in *Baker* quotes extensively from the case of *Sandoval* v. *Indus. Comm.* (1942), 110 Colo. 108, 117, 122, 130 P.2d 930, 934-936, in which the Colorado Supreme Court stated pertinently as follows:

"* * * employment at the old contract rate and under the old conditions was available. The employers were under no contract duty to offer more; on the other

hand, the miners were under no contract obligations to work for the same wages and under the same conditions; but it was the employees who were seeking a change in the *status quo* and not the employers. The miners refused to work unless the *status quo* was modified.

"* * *

"The terms of the expired contract, the negotiations of March 22, and all prior dealings between the men and the operators, indicate an intended continuance after the expiration of the contract of the employer-employee relationship. The operators still wanted to employ the men and the men still wanted to work. During the interim the operators were willing to maintain the *status quo* and the men wanted to change it * * *."

The *Baker* court itself made the following observation at page 617:

"It should be borne in mind that the claimants at all times had the opportunity to continue or resume employment at the very same work previously performed by them and under the same terms and conditions which had prevailed for two years."

The court in *Baker* therefore appears to have adopted the *status quo* principle in determining whether a labor stoppage is to be considered à strike. We believe that, in like manner, the *status quo* principle should be applied in determining whether a labor stoppage is to be considered a lockout. See *Alden* v. *U.S. Industrial Chemicals Co., supra*; *Zura* v. *Standard Slag Corp., supra*.

The reasoning of the Supreme Court in *Zanesville Rapid Transit* v. *Bailey, supra*, is consistent with the *status quo* principle cited in *Baker*. There it was clearly demonstrated that maintenance of the *status quo* would result in serious financial hardship to the employer. The refusal to extend the contract without a ten percent cut in pay was not therefore unreasonable and did not constitute a lockout. To phrase it differently, an extension of the expiring contract for any period of time would have been unreasonable under the facts of that case.

The court in *Zanesville* cites to the case of *Almada* v. *Administrator* (1951), 137 Conn. 380, 77 A.2d 765, for guidance in determining whether the conduct of an employer is such that a lockout may be said to have occurred. The court in *Almada* held that where changes in the terms of employment are such that an employee could not reasonably be expected to accept them, the action of the employer constitutes a lockout.

The Pennsylvania courts have given further definition to the reasonableness standard by holding, in effect, that the refusal to maintain the *status quo* is presumptively unreasonable. We are persuaded that this "bright line" standard comports with the realities of the collective bargaining situation and should be followed.

We therefore hold that where employees offer to continue working under the terms of a pre-existing collective bargaining agreement pending final settlement of a labor dispute, the failure of the employer to accept such an offer constitutes a lockout unless it is demonstrated that the employer has a compelling reason for failing to so agree such that the extension of the contract would be unreasonable under the circumstances.

A decision as to whether a lockout has occurred must be made with this standard in mind, a standard which the Board of Review clearly did not apply.

While the employees in the case *sub judice* offered to continue to work under the terms of the pre-existing agreement, the employer refused. Even assuming *arguendo* that the evidence supported a finding that the employer kept the plant open to employees, the employer failed to specify the terms and conditions under

which the employees could continue to work.[1]

The record does not establish that the parties could not have continued under the terms of the expired agreement until a new one had been negotiated. No argument has been raised, and the evidence does not support a conclusion, that the employer was in such straitened financial circumstances that it would have been unreasonable to extend the existing contract. In fact a raise in pay and benefits was offered to the employees prior to the work stoppage.

We therefore conclude that the action of the company constituted a lockout and that the determination of the Board of Review, which failed to apply the appropriate standard as set forth herein, is against the manifest weight of the evidence and contrary to law. See R.C. 4141.28(O); Hepner v. Bd. of Review (1978), 11 O.O. 3d 144, 147.

"III. The refusal to undertake available work and picketing constituted a strike, which is a basis for disqualification from unemployment compensation."

This assignment of error is without merit.

An additional argument raised by appellants in this assignment of error is that picketing by employees necessarily meant that the employees were on strike. We disagree.

Picketing is consistent with a lockout. It would not be unusual in the case of a lockout to find employees attempting to dissuade persons, e.g., substitute workers, from entering the plant grounds to take over their jobs.

A fair reading of the record leads to the inescapable conclusion that the work stoppage was caused by the employer's refusal to extend the contract.

Accordingly, the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

PATTON, C.J., and JACKSON, J., concur.

---

[1] The Board of Review found as follows: "Although the prior contract had been extended, the company would have paid existing wage rates. The other terms of employment were not established." Clearly, this does not amount to an offer to extend the existing contract.

Furthermore, the finding that the company would have paid existing wage rates misinterprets the evidence adduced. While Daisley stated that he would have paid existing rates, he also admitted that he did not tell this to Smith. Moreover, his only communications to the union were refusals to extend the contract. He did not indicate exceptions to that blanket refusal and refused to specify the terms and conditions under which the men would be working when asked by Smith.