Robert J. ALEXANDER, et al., Appellants,

v.

EMPLOYMENT APPEAL BOARD f/k/a Iowa Department of Job Service and the Hubinger Company, Appellees.

No. 86–1555.

Supreme Court of Iowa.

March 16, 1988.

Rehearing Denied May 6, 1988.
As Corrected May 11, 1988.

Robert W. Pratt and Emil Trott, Jr. of Barrett & Trott, Des Moines, for appellants.

Blair H. Dewey, William C. Whitten, and I. John Rossi, Des Moines, for appellee Employment Appeal Bd.

Donna M. Banik and James J. Salzman of Matkov, Griffin, Parsons, Salzman & Madoff, Chicago, Ill., and M. Carl McMurray, Keokuk, for appellee The Hubinger Co.

Considered by SCHULTZ, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Petitioners are members of the American Federation of Grain Millers Local 48. Petitioners are also former employees of respondent The Hubinger Company, a corn wet mill located in Keokuk, Iowa. A collective bargaining agreement between the union and Hubinger expired at 8:00 a.m. on October 1, 1985. Prior to this date, both the union and Hubinger gave notice of their intent to terminate this contract and to begin collective bargaining negotiations. Because the union and Hubinger were unable to agree on a new contract prior to October 1, petitioners' work ceased with the expiration of the contract.

The union's suggestion that the contract be extended for thirty days during further negotiations was rejected by Hubinger. Hubinger stated it might consider an extension if the union either posted a one-hundred-and-fifty-million-dollar bond or agreed not to strike during negotiations. The union declined these conditions. At petitioners' request, their claims for unemployment compensation benefits were consolidated at the agency level. These claims were denied by respondent Employment Appeal Board on April 4, 1986. The district court affirmed on judicial review and this appeal followed.

The Employment Appeal Board concluded that for a three-week period beginning October 1, 1985, petitioners were disqualified for benefits because their unemployment was due to a stoppage of work at Hubinger. *See* Iowa Code § 96.5(4) (1985). The Board further held that following the cessation of the stoppage of work, petitioners voluntarily quit their employment without good cause attributable to Hubinger and were consequently disqualified for benefits for that period also. *See* Iowa Code § 96.5(1) (1985).

Petitioners contend that their unemployed status was due to an employer lockout and not to any misconduct or voluntary action on their part. Consequently, they argue they were erroneously denied benefits. Iowa Code section 96.5(4) (1985), upon which the district court relied, provides that an individual shall be disqualified for unemployment compensation benefits

[f]or any week with respect to which the department finds that the individual's to-

tal or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which the individual is or was last employed....

As the statute demonstrates, a finding that a stoppage of work exists or existed at the place of employment does not end the disqualification inquiry. In addition, questions of causation must be resolved: the claimant's unemployment must be "due to" the stoppage of work, and the stoppage of work must exist "because of" a labor dispute.

Moreover, we are persuaded that the disqualification enunciated in section 96.5(4) was not intended to encompass a stoppage of work which results from an employer's lockout of claimants. We think the legislature unequivocally manifested this intent when it nullified, by joint resolution, an administrative rule which provided that "[a] lockout is a labor dispute." 1987 Iowa Acts ch. 235, § 1 (nullifying 345 Iowa Admin.Code 4.34(8)). Iowa Constitution, Article III, section 40, amendment of 1984, provides: "The general assembly may nullify an adopted administrative rule of a state agency by the passage of a resolution by a majority of all of the members of each house of the general assembly." *See also City of Burlington v. Turner*, 471 F.2d 120, 121–23 (8th Cir. 1973) (subsequent legislative enactment relevant in divining legislative intent of prior enactment). Accordingly, a stoppage of work does not disqualify a claimant when that stoppage of work results from an employer lockout.

Our holding on this point is supported by *Lee–Norse Co. v. Rutledge*, 291 S.E.2d 477 (W.Va.1982), which held, in dealing with the causation issue, that "[w]hen a contract [between a union and an employer] has expired, and there has been no new agreement, there is not created thereby a disqualifying 'dispute' [within its statute]." In reaching this conclusion, the *Lee–Norse* court overruled precedent which had held, in general, that a disqualifying "labor dispute" may result from either an employee strike or an employer lockout. *See Cumberland & Allegheny Gas Co. v. Hatcher*, 147 W.Va. 630, 637, 130 S.E.2d 115, 119 (1963). Also overruled were cases holding

that where an existing labor management contract is about to expire and workers become unemployed because of a failure to agree upon the terms of a new contract, the workers are unemployed due to a labor dispute and are disqualified for unemployment benefits. *See Miners In Gen. Group v. Hix*, 123 W.Va. 637, 648–50, 17 S.E.2d 810, 816–17 (1941). The *Lee–Norse* court concluded by noting that the statutory provision under review "was not intended to disqualify workers who were locked out during contract negotiations if they were willing to work on a day-to-day basis." *Lee–Norse Co.*, 291 N.E.2d at 484.

Montana's unemployment compensation statute contains a disqualification substantially identical to Iowa's. *See* Mont.Code Ann. § 87–106 (1972). That state's supreme court has held the disqualification does not encompass an employer's lockout. In *Montana Ready Mixed Concrete Ass'n v. Board of Labor Appeals*, 175 Mont. 143, 572 P.2d 915 (1978), that court cited Montana's statutorily-expressed declaration of public policy behind its unemployment compensation act, identical to Iowa's, before concluding

> [i]t would be difficult for reasonable minds to reach the conclusion that the lockout was precipitated by the union or the employees in view of the fact that the union's attitude was that of negotiating any differences which the employees had through the collective bargaining process and the action of the employees seeking to return to work and being refused employment by the employer. The employees involved were unemployed through no fault of their own.

*Id.* at 150, 572 P.2d at 919.

Having concluded that a stoppage of work which results from an employer lockout falls outside the disqualification contained in section 96.5(4), the cause of the stoppage of work in the present case must be determined. We note that, in general, a lockout has been defined as "a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." *Zanesville Rapid Transit, Inc. v. Bailey*, 168 Ohio St. 351, 354, 155 N.E.2d 202, 205 (1958).

*Erie Forge & Steel Corp. v. Unemployment Compensation Bd. of Review*, 400 Pa. 440, 163 A.2d 91 (1960), presented the supreme court of Pennsylvania with a situation substantially identical to that presented to us by this case. *Erie* addressed a factual scenario in which the union and employer were unable to reach agreement on a new contract prior to the expiration of the preexisting collective bargaining agreement. *Id.* at 442–43, 163 A.2d at 93. The employees proposed that they continue working under the terms and conditions of the expiring agreement so as to allow for additional time for negotiations. *Id.* at 443, 163 A.2d at 93. The employer refused the proposed extension and stated that work, although available, was available only on its terms. *Id.* In analyzing these circumstances, the Pennsylvania court observed:

> In the very delicate and sensitive negotiations which are involved in the development of a new collective bargaining agreement to replace one that is nearing its expiration, all parties must be sincere in their desire to maintain the continued operation of the employer's enterprise. The law contemplates that collective bargaining will be conducted in good faith, with a sincere purpose to find a basis for agreement. Neither an adamant attitude of "no contract, no work" on the part of the employees, nor an ultimatum laid down by the employer that work will be available only on his (employer's) terms, are serious manifestations of a desire to continue the operation of the enterprise. While either or both of these positions may legitimately be taken by the parties during the bargaining negotiations prior to the expiration of the existing contract, when the contract has in fact expired and a new agreement has not yet been negotiated, the sole test under [the statute] of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and the disqualification for unemployment compensation benefits in the case of a "stoppage of work because of a labor dispute" does not apply.

*Id.* at 443–45, 163 A.2d at 93–94. The court concluded by noting that "[o]nce we accept as fact that the ultimate responsibility for the work stoppage lay with the employer, it is clear that there has been a 'lockout' thus qualifying the claimants for benefits under the Act." *Id.* at 445–46, 163 A.2d at 94.

Pennsylvania has continued to adhere to these principles in administering its statutory stoppage of work disqualification. *See, e.g., Jehn v. Unemployment Compensation Bd. of Review*, —— Pa.Commw. ——, 532 A.2d 57 (1987). We note that Pennsylvania's statute expressly distinguishes and exempts lockouts from its stoppage of work disqualification. *See* 43 Pa.Stat. § 802(d) (1987). We think, however, as discussed above, that our legislature intended a similar understanding of our stoppage of work disqualification. *See* 1987 Iowa Acts ch. 235, § 1.

█ In addition, we agree with the holding in *Oriti v. Board of Review*, 7 Ohio App.3d 311, 314, 455 N.E.2d 720, 724 (1983):

> We therefore hold that where employees offer to continue working under the terms of a pre-existing collective bargaining agreement pending final settlement of a labor dispute, the failure of the employer to accept such an offer constitutes a lockout unless it is demonstrated that the employer has a compelling reason for failing to so agree such that the extension of the contract would be unreasonable under the circumstances.

As the Board failed to apply these standards, we reverse the action of the district

court and remand this case for further proceedings.

REVERSED AND REMANDED.