DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas which reversed the decision of the Unemployment Compensation Review Commission ("Commission"). For the reasons that follow, we affirm the decision of the trial court.
This appeal concerns the claims for unemployment compensation benefits filed by appellee, Charles R. Baker, and seventeen other former employees of ANR Advance Transportation Company, Inc. ("ANR"). ANR was a trucking company that had six terminals in Akron, Cincinnati, Cleveland, Columbus, Dayton and Toledo, Ohio. ANR had 240 employees who were members of various local unions of the International Brotherhood of Teamsters ("the Teamsters").
ANR had a labor agreement with the Teamsters, which was an addendum to the National Master Freight Agreement, that expired on March 31, 1998. Work continued after that date, under the same terms and conditions of the expired agreement, until December 7, 1998, when ANR implemented its final offer. The employees began to strike at all six terminals on December 8, 1998. ANR ceased operations as a result of the work stoppage and was still not operating as of the date of the Commission's hearing. Picketing ceased on December 18, 1998 when the union negotiating committee informed the local unions that there was no evidence that ANR planned to resume its operations. Appellees sought unemployment compensation.
A hearing was held, beginning on January 11, 1999, before Tom Miller of the Ohio Bureau of Employment Services, Unemployment Compensation Division. On January 29, 1999, the Commission issued its decision denying the claimants' request for unemployment compensation. The Commission's decision was appealed to the common pleas courts in each of the six counties where ANR had its terminals. The appeal to the Lucas County Court of Common Pleas concerned 18 of the 240 union employees formerly employed by ANR.
The Lucas County Court of Common Pleas reversed the decision of the Commission, finding that the decision was "unlawful, unreasonable, and against the manifest weight of the evidence." Specifically, the common pleas court held that there was no evidence that negotiations had ceased at the time ANR implemented its final offer. As such, the employees became unemployed as a result of a lockout, rather than as a result of a labor dispute.
The Director of the Ohio Department of Job and Family Services appeals the decision of the common pleas court and raises the following sole assignment of error:
"The common pleas court erred in reversing the Unemployment Compensation Review Commission's finding that claimants were not entitled to unemployment compensation as there is competent, credible evidence in the record that claimants were unemployed due to a labor dispute other than a lockout."
In reviewing the Commission's decision, an appellate court has the duty to determine whether the decision is supported by the evidence in the record; however, it is not permitted to make factual findings or determine the credibility of witnesses. Tzangas, Plakas Mannos v.Administrator, Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, 696, citing Irvine v. Unemp. Comp. Bd. of Rev. (1985), 19 Ohio St.3d 15, 18. A reviewing court, whether it be the common pleas court or the Ohio Supreme Court, may only overturn the Commission's decision if it was "unlawful, unreasonable, or against the manifest weight of the evidence." R.C. 4141.28(O)(1), effective at the time of the incidents subject to this appeal; and Tzangas, supra.
Pursuant to R.C. 4141.29(D)(1)(a), no individual may be paid unemployment compensation benefits where "[t]he individual's unemployment was due to a labor dispute other than a lockout * * *; and for so long as the individual's unemployment is due to such labor dispute." The issue in this case is whether the actions of ANR in implementing its final offer constituted a lockout, or whether the employees were unemployed due to their strike.
A "lockout" has been defined by the Ohio Supreme Court as follows:
 "* * * a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms. [Citation omitted.]" Zanesville Rapid Transit, Inc. v. Bailey (1958), 168 Ohio St. 351, 354; and Bays v. Shenango Co. (1990), 53 Ohio St.3d 132, 133.
To ascertain whether a work stoppage resulted from a strike or a lockout, it is necessary "`to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing.'" Bays v. Shenango Co. (1990), 53 Ohio St.3d 132, 135, quoting Philco Corp. v. Unemp. Comp. Bd. of Rev. (1968), 430 Pa. 101,103. To make this determination, the Ohio Supreme Court in Bays adopted the Pennsylvania status-quo test. The court stated that the sole test to be used to determine whether the work stoppage was the responsibility of the employer or the employees is as follows:
"`* * * Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and the disqualification of unemployment compensation benefits in the case of a "stoppage of work because of a labor dispute" does not apply.'" Bays at 134-135, quotingErie Forge Steel Corp. v. Unemp. Comp. Bd. of Review (1960), 400 Pa. 440,443-445.
Based on the facts in this case, according to Bays, if negotiations were still continuing and the employees agreed to continue working for a reasonable time under the terms of the expired contract, then ANR's implementation of its final offer, and the resulting work stoppage, would constitute a lockout. If, however, ANR demonstrated compelling reasons and showed that "the extension of the contract would be unreasonable under the circumstances," then ANR's failure to maintain the status quo would not constitute a lockout. See Bays at 135, quoting Oriti v. Boardof Rev. (1983), 7 Ohio App.3d 311, 314.
The Commission, however, did not apply the Bays status-quo test to the facts in this case. Because it found that "[c]ontract negotiations were not continuing at the time the work stoppage began," the Commission applied the analysis set forth in Zanesville, 168 Ohio St. 351, to determine whether the employees were unemployed as a result of a lockout. In so doing, the Commission considered whether the changes in the terms of employment were such that "the employees would be expected in reason to accept them rather than quit work" or whether the conditions of further employment were "such that the employees could not reasonably be expected to accept them." See Zanesville at 355, quoting Almada v. Administrator, Unemp. Comp. Act (1951), 137 Conn. 380, 77 A.2d 765.
In applying Zanesville, the Commission held that "[t]he terms and conditions of employment imposed by the employer on December 7, 1998 were not so unfavorable as to leave the employees no alternative but to strike." As such, the Commission held that the employees were not unemployed as a result of a lockout and denied their request for benefits.
We, however, agree with the common pleas court that the Commission's finding, regarding the status of the negotiations at the time of the implementation of the final offer, is not supported by the record. According to Melvin Nensel, vice president of labor relations with ANR, ANR made its final-best offer on November 16, 1998. On November 18, 1998, the union rejected this final offer after lengthy discussions. Nensel testified that "the teamster negotiators were compassionate to [ANR's] representations, but not able to accommodate some means for accomplishing that." Thereafter, approximately one or two weeks prior to December 7, 1998, ANR notified the Teamsters that it would implement its final offer on that date.
Of significance, we note that Nensel never testified that ANR considered the negotiations to be at an impasse. Rather, Nensel testified that ANR was not willing to have the employees continue to work on or after December 7, 1998, under the prior collective bargaining agreement. Nensel did testify that no negotiations had been held after December 8, 1998; however, that does not resolve any issue with respect to whether negotiations had broken down prior to ANR's implementation of its final offer. Moreover, we note that there is testimony and documents in the record that establish that the Teamsters made a counter proposal and were willing to negotiate further, in lieu of having ANR implement its final offer; however, ANR refused to return to the bargaining table. Accordingly, we find that there is no evidence to support the Commission's finding that contract negotiations were not continuing at the time the work stoppage began, and, in fact there was evidence to the contrary.
Additionally, although the Commission found that ANR had been attempting to negotiate with the union since the summer of 1997, in fact, there had only been nine bargaining sessions held from August to November 1998, and the status quo had only been maintained for approximately eight months at the time ANR implemented its final offer. As such, there is no evidence that a continuation of the status quo on ANR's part would have been unreasonable under the circumstances.
Furthermore, although Nensel referenced problems with respect to ANR's financial situation, no evidence of the severity or immediacy of the situation was made part of the record. Accordingly, we find that there was no evidence in the record that demonstrated a compelling reason for ANR to refuse to maintain the status quo. See Bays at 135.
Insofar as there is evidence that the union desired to continue negotiations, the status quo had not been maintained for an unreasonable period of time, and because ANR failed to demonstrate any compelling reasons for implementing its final offer when it did, we find that ANR's implementation of its final offer constituted a lockout, pursuant toBays. We therefore find that the decision of the Commission denying the employees their claims for unemployment compensation benefits is unlawful, unreasonable, and against the manifest weight of the evidence.
Appellant's sole assignment of error is therefore found not well-taken and the judgment of the Lucas County Court of Common Pleas is affirmed. The Commission's determination is reversed and this case is remanded to the Unemployment Compensation Review Commission for further proceedings consistent with this opinion. Costs of this appeal to be paid by appellant.
We further find that our holding is in direct conflict with Aliff v.Director, Ohio Dept. of Job and Family Serv. (Sept. 25, 2001), Franklin App. No. 01AP-018, and Aliff v. Ohio Bur. of Employ. Serv. (Mar. 9, 2001), Hamilton App. No. C-000238, which concern the identical facts as exist in this case. As such, we respectfully submit this case to the Ohio Supreme Court, pursuant to Art. IV, Section 3(B)(4), Ohio Constitution, for review and final determination as follows:
"Were negotiations continuing at the time ANR implemented it final offer? Should the reasonableness test set forth in Zanesville RapidTransit, Inc. v. Bailey (1958), 168 Ohio St. 351, or the status-quo test set forth in Bays v. Shenango Co. (1990), 53 Ohio St.3d 132, be applied to the facts in this case to determine whether the employees were unemployed due to a lockout?"
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.